**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| IN RE SUNTRUST BANKS, INC. | : | CIVIL ACTION NO. |
| ERISA LITIGATION | : | 1:08-CV-3384-RWS |
| | : | |
| | : | |

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss [78]

and Plaintiffs' Motion for Oral Argument [102].  After considering the record,

the Court enters the following Order.

As an initial matter, the Parties' briefs provide a sufficient basis to decide

the pending Motion to Dismiss [78].  Therefore, Plaintiffs' Motion for Oral

Argument [102] is **DENIED**.

**Background**[1]

---

[1] The facts contained herein reflect Plaintiffs' contentions as set forth in the
Consolidated ERISA Class Action Complaint ("Complaint") [58] and in the Response
to Defendants' Motion to Dismiss [84].  In examining the merits of a motion to
dismiss, the pleadings are construed broadly so that all facts pleaded therein are
accepted as true, and all inferences are viewed in a light most favorable to the
plaintiff. Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L. Ed. 2d 1030 (1964);
Conner v. Tate, 130 F.Supp.2d 1370, 1373 (N.D. Ga. 2001).

Plaintiffs' Consolidated ERISA[2] Class Action Complaint ("Complaint") [58] alleges that Defendants, fiduciaries of the SunTrust Banks, Inc. 401(k) Savings Plan (the "Plan"), breached their fiduciary duties under ERISA by maintaining the Plan's large investment in SunTrust (or the "Company") common stock ("SunTrust Stock" or "Company Stock") in the Plan from May 15, 2007 to the Present (the "Class Period") when they knew or should have known that the stock was an imprudent retirement investment. As a result, the Plan suffered hundreds of millions of dollars in losses during the Class Period. (Dkt. [58] at ¶ 6).

Plaintiffs allege that

Defendants failed to take *any* action to satisfy their [fiduciary] duty despite the clear imprudence of maintaining the Plan's heavy investment in Company Stock due to, *inter alia*: (a) the Company's substantial exposure to subprime mortgage loan losses and (b) the Company's failure to properly account for and to disclose its exposure to losses tied to the illiquidity of mortgage-backed securities and its business operations in the declining real estate market.

(Dkt. [84] at 2 (citing Complaint at ¶¶ 5-9, 115)).

---

[2] This is a class action brought pursuant to §§ 409 and 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132(a)(2).  (Dkt. [58] at ¶ 2).

## I.      The Plan

The purpose of the Plan was to enable participants (the "Participants") to save for their retirement. (Dkt. [58] at ¶ 66). The Plan is sponsored by SunTrust and is a defined contribution plan and qualifies as an eligible individual account plan ("EIAP") under ERISA.  (Id. at ¶ 65).  The plan was created by merging the retirement plans of SunTrust's two predecessor entities in 1989.  (Id. at ¶ 67).  Effective January 1, 2007, Plaintiffs assert that the Plan was converted from an employee stock ownership plan ("ESOP") with 401(k) features to a 401(k) plan wish ESOP features.  (Id. at ¶ 68).

The SunTrust Benefits Plan Committee (the "Plan Committee") was responsible for the day-to-day management and administration of the Plan, including selecting and monitoring investment funds to be made available to the Plan's Participants and communicating with the Participants about matters relevant to the Plan.  (Id. at ¶ 47).  As such, the Plan offered a number of different investment options selected by the Plan Committee.  One of the options available to Plan Participants was the SunTrust Common Stock Fund (the "Employer Stock Fund"), which was designed to invest primarily in SunTrust Stock.  (Id. at ¶ 75).  During the class period, until December 31, 2008, SunTrust's matching contributions to Participants' accounts were initially

3

automatically invested in SunTrust Stock, through the Employer Stock Fund.

(Id. at ¶ 73).  Beginning January 1, 2009, all matching contributions were

invested automatically in the same investment options chosen by the Participant

for current contributions, unless the Participant chose otherwise.  (Id.).  As of

December 31, 2006, approximately 49% of the Plan's total investments were

invested in SunTrust Stock.  (Id. at ¶ 76).

The Parties disagree over whether the Plan's fiduciaries had the authority

to eliminate the Employer Stock Fund as an investment option for the Plan.

The Plan document states that "[t]he investment funds selected by the [Plan]

Committee are in addition to the Employer Stock Fund . . . which [is] an

integral ESOP feature of the Plan design."  (Plan Doc. at § 4.2(a)).  The Plan

document also states that while "[t]he [Plan] Committee will have primary

responsibility for administering the Plan and all powers necessary to enable it to

properly perform its duties . . . it will have no authority to limit, expand, or

remove the Employer Stock Fund."  (Id. at § 9.1(b)(4)).

## II.    The Defendants

The Complaint divides the Defendants into several different fiduciary

categories.  During the Class Period, SunTrust was the sponsor of the Plan.

(Dkt. [58] at ¶ 30).  SunTrust is governed by the SunTrust Board of Directors

4

(the "Board").  (<u>Id.</u> at ¶ 32).  The Board was responsible for appointing and removing the members of the Compensation Committee of the Board (the "Compensation Committee"), whose chairman appointed the Plan Committee. (<u>Id.</u> at ¶ 33).  The Complaint refers to the Board itself and its members collectively as the "Director Defendants."[3]  (<u>Id.</u>).

The Complaint also names the Compensation Committee as Defendants (the "Compensation Committee Defendants").  Plaintiffs allege that the Compensation Committee Defendants exercised responsibility with respect to the Plan, including oversight of the administration and operation of the Plan, particularly the responsibility and power through the Chair of the Compensation Committee to appoint the members of the Plan Committee.  (<u>Id.</u> at ¶ 43).  The Complaint names as Defendants the Plan Committee and its Investment Sub-Committee.[4]  (<u>Id.</u> at ¶¶ 45, 62).   The Plan Committee was "responsible for the day-to-day management and administration of the Plan," including "the

---

[3] The individual Director Defendants are set forth in the Complaint at paragraphs 34-42.

[4] The individual Benefits Plan Committee Defendants are set forth in the Complaint at paragraphs 49 and 52-61.  The individual Investment Sub-Committee Defendants are set forth in the Complaint at paragraphs 63-64.  Unless otherwise noted, reference to the Plan Committee or Plan Committee Defendants incorporate its Investment Sub-Committee.

AO 72A
(Rev.8/82)

responsibility to select and monitor investments funds to be made available to the Participants, deciding whether and to what extent to allow Participant investment in the Employer Stock Fund." (Id. at ¶ 45). The Investment Sub-Committee "exercised responsibilities for reviewing and assessing performance of investment choices offered in the Plan." (Id. at ¶ 62).

### III.    The Counts

Count I is alleged as to all Defendants. (Id. at ¶ 265). The allegations set forth in Count I can best be divided into two parts: (1) Plaintiffs' "Investment Claim" and (2) Plaintiffs' "Communication Claims." The Investment Claim asserts that the Defendants failed to prudently manage the Plan and the Assets of the Plan. Count I asserts that all of the Defendants were fiduciaries of the Plan, in that they "exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets." (Id. at ¶ 266). As fiduciaries, Plaintiffs assert that Defendants were responsible for ensuring that all investments in Company Stock in the Plan were prudent and consistent with the purpose of the Plan. (Id. at ¶ 267). Defendants purportedly breached this duty by failing to take into account the changing risk profile of SunTrust Stock and by continuing to invest in the Employer Stock

6

Fund when they knew or should have known that SunTrust Stock was not a suitable investment for the Plan.  (Id. at ¶ 270).

The Communication Claims set forth in Count I assert that Defendants' fiduciary duties of loyalty and prudence obligated them to speak truthfully to participants (the "False Information Claim"), as well as to disclose to Participants all negative material information necessary to make informed decisions about investment in Company Stock (the "Participant Disclosure Claim").  (Id. at ¶ 269).  Plaintiffs maintain that despite Defendants' knowledge of the inappropriate nature of SunTrust Stock as an investment option in the Plan, they failed to provide accurate information to Participants and did not disclose negative material information to participants.  (Id. at ¶ 274).  Count I also alleges that Defendants breached their co-fiduciary duties to each other by "knowingly participating in, or knowingly undertaking to conceal, the other Defendants' failure to disclose crucial information regarding the severe mismanagement of the Company and the imprudence of the Company Stock." (Id. at ¶ 275).

7

Count II is asserted against SunTrust, the Director Defendants, the Compensation Committee Chairman, and Defendant Mark Chancy[5] (the "Monitoring Defendants").  The allegations set forth in Count II can best be divided into two parts: (1) Plaintiffs' "Monitoring Claim" and (2) Plaintiffs' "Plan Committee Disclosure Claim".  Plaintiffs assert that the scope of the Monitoring Defendants' fiduciary duties "included the responsibility to appoint, remove, and thus, monitor the performance of other fiduciaries, including the Benefits Plan Committee."  (Id. at ¶ 281).  Plaintiffs assert that the Monitoring Defendants breached their fiduciary duties by:

> (a) failing, at least with respect to the Plan's investment in Company Stock, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so . . . (b) failing to ensure that the monitored fiduciaries appreciated the true extent of SunTrust's risky and inappropriate business practices, and the likely impact of such practices on the value of the Plan's investment in SunTrust Stock; (c) the Company's failure to properly account for and to disclose its exposure to losses tied to the illiquidity of mortgage-backed securities and its business operations in the declining real estate market, which caused the price of SunTrust Stock to be artificially inflated during the Class Period; and (d) failing to remove appointees whose performance was inadequate in that they continued to make and maintain

---

[5] Chancy served as a member of and, at times, as Chair of the Plan Committee during the Class Period.  He has been Chief Financial Officer ("CFO") of SunTrust since August 10, 2004.  As CFO, Chancy appointed the other members of the Plan Committee, and the members of the Committee served at his pleasure. (Dkt. [58] at ¶ 49).

> investments in SunTrust Stock despite their knowledge of practices
> that rendered SunTrust Stock an imprudent investment during the
> Class Period . . . .

(Id. at ¶ 285).  Plaintiffs also allege that the Monitoring Defendants are liable as

co-fiduciaries "because they knowingly participated in each other's fiduciary

breaches as well as those by the monitored fiduciaries, they enabled breaches by

these Defendants, and they failed to make any effort to remedy these breaches,

despite having knowledge of them."  (Id. at ¶ 286).

## IV.    Allegations of Imprudence[6]

Plaintiffs allege that as early as 2004, experts expressed fears that relaxed

lending practices were increasing risks for borrowers and lenders in overheated

housing markets.  (Dkt. [58] at ¶ 119).  Despite the warning signs, Plaintiffs

maintain that SunTrust moved away from its traditional business practices

towards the subprime housing market, originating and retaining risky residential

mortgage loan products.  (Id. at ¶¶ 146, 148).  These risky products disregarded

borrower qualifications, particularly the borrower's ability to repay the loan.

(Id. at ¶¶ 128, 146).  This move altered the Company's risk profile. (Id.).

---

[6] Paragraph 5(a)-(k) of the Complaint [58] provides an overview of Plaintiff's
allegations of imprudence.

AO 72A
(Rev.8/82)

Plaintiffs maintain that SunTrust's change of direction ultimately resulted in steady, negative valuations of the Company, layoffs of thousands of employees, and tremendous losses to the Plan.  (Id. at ¶¶ 162, 169, 174-76, 179-80, 188, 196, 202, 237).  Plaintiffs' core allegation is that "the Company's stock became an overly risky and inherently imprudent investment option for the Plan because of the Company's heavy involvement in the toxic subprime real estate market."  (Dkt. [84] at 4 (citing Complaint at ¶ 115)).  As a result of SunTrust's fiduciary failures, the Plan's Participants have lost hundreds of millions of dollars.   (Dkt. [58] at ¶ 6).

## Discussion

## I.    Procedural Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual

10

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  The court does not need to "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

## II.     Brief Overview of ERISA and Relevant Remedial Provisions

Congress enacted ERISA in 1974 in order to "assur[e] the equitable character of [employee benefit plans] and their financial soundness."  Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570, 105 S. Ct. 2833, 86 L. Ed. 2d 447 (1985).  In enacting ERISA, Congress

11

established minimum standards of fiduciary conduct for trustees, administrators

and others dealing with retirement plans.  ERISA defines a fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such
> plan, or has any authority or responsibility to do so, or (iii) he has
> any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A).

An employer may sometimes act in a non-fiduciary capacity and is only

subject to claims for breach of fiduciary duties when acting in a fiduciary

capacity.  Therefore, the threshold question for any claim of breach of fiduciary

duty is "whether that person was acting as a fiduciary (that is, was performing a

fiduciary function) when taking the action subject to complaint."  Pegram v.

Herdrich, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000).  The

fiduciary function is not an "all-or-nothing concept" and a defendant is only a

fiduciary to the extent that he exercises discretionary authority "with respect to

the particular activity at issue."  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d

1267, 1277 (11th Cir. 2005).  "A person or entity becomes an ERISA fiduciary

either [1] by being named as a fiduciary in written instruments that govern how

12

an employee benefit plan is established or maintained, or [2] by exercising discretionary authority or control over the management, administration, or assets of a plan." In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 872 (S.D. Tex. 2004).

ERISA holds fiduciaries to a prudent man standard of care, which entails: (1) acting solely in the interest of the participants and beneficiaries; (2) "with the care, skill, prudence, and diligence . . . that a prudent man . . . would use . . .;" (3) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;" and (4) acting in accordance with the documents and instruments governing the plan unless doing so would violate other provisions of ERISA.  29 U.S.C. § 1104(a)(1).  ERISA also contains specific provisions for eligible individual account plans ("EIAPs") such as the Plan at issue here.  An EIAP is an individual account plan which is a profit sharing, stock bonus, thrift, or savings plan or an employee stock ownership plan ("ESOP"), which "explicitly provides for acquisition and holding of qualifying employer securities."  29 U.S.C. § 1107(d)(3)(A)-(B).  In regards to EIAPs, a fiduciary does not violate "the diversification requirement . . . and the prudence requirement (only to the

extent that it requires diversification)" by acquiring or holding "qualifying

employer securities."  29 U.S.C. § 1104(a)(2).

## III.   Plaintiffs' Investment Claim (Count I)

Defendants contend that Plaintiffs' Investment Claim set forth in Count I

fails as a matter of law because:

> (1) it seeks to impose fiduciary liability for investment decisions
> on Defendants that exercised no discretion in that regard; (2) it is
> barred by the terms of the Plan (which provide that the Employer
> Stock Fund was "established [by the Plan sponsor] as an integral
> ESOP feature of the Plan design" and make clear that the Plan
> Committee has "no authority to limit, expand, or remove the
> Employer Stock Fund" from the Plan); (3) it is precluded by
> ERISA (which specifically exempts plans like SunTrust's from the
> duty of prudence to the extent it would require diversifying
> investments in employer stock); and (4) it cannot be judged under
> the "presumption of prudence" framework sometimes used in the
> Third Circuit.

(Dkt. [78] at 11).  Count I of Plaintiffs' Complaint is alleged against all

Defendants.  As an initial matter the Court must determine whether all the

Defendants were "acting as a fiduciary (that is, were performing a fiduciary

function) when taking the action subject to complaint."  Pegram, 530 U.S. at

226.  As noted above, the fiduciary function is not an "all-or-nothing concept"

and a defendant is only a fiduciary to the extent that he exercises discretionary

14

authority "with respect to the particular activity at issue."  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005).

Regarding Plaintiffs' Investment Claim, the "particular activity at issue" is the investment of the Plan's assets in SunTrust Stock.  Plaintiffs' Investment Claim against SunTrust must be dismissed because the Company did not make decisions related to the investment options available to Plan Participants or allocation of the Plan's assets.  To the extent that Plaintiffs are attempting to hold the Company liable under a doctrine of *respondeat superior*, the Court will not impose liability under ERISA on that ground.  See Woods v. Southern Co., 396 F. Supp. 2d 1351, 1370 n.10 (N.D. Ga. 2005) (expressing reservation about imposing respondeat superior liability under ERISA, given absence of any express contemplation of such theory within text or legislative history of statute).  Similarly, Plaintiffs' Investment Claim against the Director Defendants and the Compensation Committee Defendants must be dismissed because they had no responsibility or power to make decisions regarding the offerings of the Plan or allocation of its assets.  Plaintiffs' Investment Claim is only proper as to the Plan Committee which was "responsible for the day-to-day management and administration of the Plan," including "the responsibility to select and monitor investment funds to be made available to the Participants,

15

deciding whether and to what extent to allow Participant investment in the

Employer Stock Fund," and as to the Investment Sub-Committee "which

exercised responsibilities for reviewing and assessing performance of

investment choices offered in the Plan.[7]  (Dkt. [58] at ¶¶ 47, 62).

Defendants argue that the Plaintiffs' Investment Claim must also be

dismissed as to the Plan Committee and its Investment Sub-Committee because

the claim is " 'a rebadged argument for diversification' that is precluded by

ERISA."  (Dkt. [78] at 16 (citing Mellot v. ChoicePoint, Inc., 561 F. Supp. 2d

1305, 1312 (N.D. Ga. 2007)).  Defendants argue that Plaintiffs' Investment

Claim, based upon a failure to diversify the Plan's investments away from

SunTrust Stock, should be dismissed because ERISA precludes such

diversification arguments for EIAPs, such as the Plan.  (Id. at 16).  Plaintiffs do

not dispute that EIAPs are exempt from the duty of diversification under

ERISA.  (Dkt. [84] at 7).  Rather, Plaintiffs' contend that the "crux of [their]

claim is that Defendants breached their fiduciary duties by permitting the Plan

to invest in SunTrust stock when SunTrust stock was clearly imprudent due to

the severe mismanagement of the Company as well as artificial inflation of the

---

[7] Defendants concede that the Benefits Plan Committee bears fiduciary
responsibility for selecting the investment options made available to Plan Participants.
(Dkt. [78] at 12).

Company stock, *not* as a result of the failure to diversify."  (Id. at 7-8 (emphasis in original)).

The relevant portion of ERISA reads: "In the case of an [EIAP] . . . , the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification) . . . [are] not violated by the acquisition or holding of . . . qualifying employer securities."  29 U.S.C. § 1104(a)(2).  This Court has previously examined the question of whether a claim for failure to diversify an EIAP can constitute a breach of the duty of prudence and has concluded that such a claim does not constitute a breach of this duty.  See In re Beazer Homes USA, Inc. ERISA Litig., No. 1:07-CV-0952, 2010 WL 1416150 (N.D. Ga. April 2, 2010);  In re Coca-Cola Enters. ERISA Litig., No. 1:06-CV-0953, 2007 WL 1810211, (N.D. Ga. June 19, 2007) ("CCE"); Mellot, 561 F. Supp. 2d 1305; Pedrazza v. Coca-Cola Co., 456 F. Supp. 2d 1262 (N.D. Ga. 2006); Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310 (N.D. Ga. 2006). After a careful examination of these decisions and Plaintiffs' arguments to try and distinguish their Investment Claim from the type of claims this Court has previously found to be premised upon diversification, the Court holds that Plaintiffs' Investment Claim fails to state a claim as a matter of law and must be dismissed.

17

Plaintiffs assert that their Investment Claim is not based upon diversification and therefore is not excluded by 29 U.S.C. § 1104(a)(2). However, as noted above, Plaintiffs' Opposition to Defendants' Motion to Dismiss states that "Defendants breached their fiduciary duties by permitting the Plan to invest in SunTrust stock when SunTrust Stock was clearly imprudent . . . ." (Dkt. [84] at 7). While Plaintiffs maintain that their Investment Claim is not a failure to diversify claim, it is similar to claims this Court has previously rejected as diversification claims. In <u>Smith</u>, the plaintiff alleged that defendants acted imprudently by "maintaining the Plan's pre-existing heavy investment in Delta securities when the stock no longer was a prudent investment for the Plan." 422 F. Supp. 2d at 1326. The Court described plaintiffs' pleading in that case as an attempt "to argue around ERISA's diversification exemption by alleging that the [Plan's] heavy investment in Delta securities was imprudent irrespective of the lack of diversification." <u>Id.</u> at 1327. The Court held that:

> At its core, however, Count I just amounts to another form of diversification argument. Section 1104(a)(2) speaks to such an argument, exempting not only the duty to diversify but also the duty of prudence to the extent it requires diversification. Therefore, regardless of Plaintiff's phraseology, a strict application of § 1104(a)(2) mandates dismissal of Count I . . .

18

Id.[8]   The same is true for Plaintiffs' Investment Claim in this case.  Therefore,

Plaintiffs' Investment Claim, asserted as part of Count I of the Complaint, fails

to state a claim as a matter of law and is **DISMISSED**.[9]

Furthermore, as previous decisions of this Court have done, this Court

once again rejects the rebuttable presumption framework set forth in Moench v.

Robertson,[10] because it runs counter to the plain language of ERISA.  See

---

[8]  See also CCE, 2007 WL 1810211, at *9 ("EIAP fiduciairies 'do not have a
duty to diversity and do not act imprudently by not diversifying the assets of an
EIAP.'" (quoting Smith, 422 F. Supp. 2d at 1325)); Pedrazza, 456 F. Supp. 2d at 1273
("While ERISA generally provides that a fiduciary must diversify the investment of a
plan, it also excuses that duty in the case of a fiduciary of an EIAP.  Further, the duty
of prudence is excused to the extent that it depends on diversification." (citations
omitted)); Mellot, 561 F. Supp. 2d at 1312, 1313 ("Plaintiff's characterization of his
claim as an 'artificial inflation' claim rather than a diversification claim is simply
another form of a diversification argument. . . . Because the Court finds that Plaintiff's
claim is a rebadged argument for diversification, a strict application of §1104(a)(2)
ends the inquiry and requires dismissal of the claim.").

[9] Plaintiffs' argument that it was imprudent to continue to hold or further invest
in SunTrust stock in light of the facts alleged in the Complaint is persuasive.
However, the Court will not stray from the plain language of 29 U.S.C. § 1104(a)(2)
which precludes Plaintiffs from prevailing on the type of prudence claim it seeks to
assert.  See Lamie v. United States Tr., 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed.
2d 1024 (2004) ("It is well-established that when the statute's language is plain, the
sole function of the courts . . . is to enforce it according to its terms." (internal quotes
and citation omitted)).

[10]  62 F. 3d 553 (3d Cir. 1995).  The Third Circuit stated "that in the first
instance, a [plan] fiduciary who invests the assets in employer stock is entitled to a
presumption that it acted consistently with ERISA by virtue of that decision.
However, the plaintiff may overcome that presumption by establishing that the
fiduciary abused its discretion by investing in employer securities."  Id. at 571.

<u>Smith</u>, 422 F. Supp. 2d at 1329-30; CCE, 2007 WL 1812011 at *9-10; <u>Pedraza</u>, 456 F. Supp. 2d at 1275-76; <u>Mellot</u>, 561 F. Supp. 2d at 1314.  Because Plaintiff's Investment Claim is barred by the plan language of ERISA, the Court need not decide whether it is also barred by the language of the Plan

AO 72A
(Rev.8/82)

Document.[11] Defendants' Motion to Dismiss [78] as to Plaintiff's Investment

Claim is **GRANTED**.

## IV.    Plaintiffs' Communication Claims

Plaintiffs' Communication Claims allege that all Defendants breached

their duty of loyalty and prudence: (1) by not providing Plan Participants with

---

[11] Defendants argue that the Plan document requires the Employer Stock Fund and the Plan Committee has no discretion to eliminate it.  The Plan document states that "[t]he investment funds selected by the [Plan] Committee are in addition to the Employer Stock Fund . . . which [is] an integral ESOP feature of the Plan design." (Plan Doc. at § 4.2(a)).  The Plan document also states that while "[t]he [Plan] Committee will have primary responsibility for administering the Plan and all powers necessary to enable it to properly perform its duties . . . it will have no authority to limit, expand, or remove the Employer Stock Fund."  (Id. at § 9.1(b)(4)).

Plaintiffs argue that ERISA fiduciaries are only limited by Plan documents to the extent that the documents are consistent with ERISA.  In a case concerning a mirror voting provision, the Eleventh Circuit stated, "the trustee must disregard the provision, just like it would have to disregard any other plan provision controlling the disposition of plan assets which leads to an imprudent result."  Herman v. NationsBank Trust Co., 126 F.3d 1354, 1369 n.15 (11thCir. 1997).  In a recent *amicus curiae* brief, the Secretary of Labor noted:

> [A]lthough plan fiduciaries are required to follow plan documents, they must do so only "insofar as such documents and instruments are consistent with the provisions" of Title I and Title IV of ERISA. 29 U.S.C. § 1104(a)(1)(D).  See Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995) ("a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA"); Coleman v. Interco Inc. Divisons' Plans, 933 F.2d 550, 551 (7th Cir. 1999) (noting that when ERISA and plan language diverge "ERISA is trumps"); cf. Imel v. Laborers Pension Trust Fund for N. Cal., 904 F.2d 1327, 1330 (9th Cir. 1990) ("[p]rivate parties may not agree to alter statutory duties") (citing Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285 (1946)).

Brief of *Amicus Curiae* Secretary of Labor in Support of Appellant at 7 In re Citigroup ERISA Litig. (No. 09-3804-cv 2d Cir. (Dkt. [84-3])).

complete and accurate information concerning the Company and its Stock (the "False Information Claim");  and (2) by not disclosing material negative information, thus preventing Plan Participants from properly assessing the prudence of investing in SunTrust Stock (the "Participant Disclosure Claim"). (Dkt. [58] at ¶¶ 252-53, 269, 274).

A.    False Information Claim

ERISA requires that plan fiduciaries publish a summary plan description ("SPD"), an annual report, and a financial statement for the plan.  29 U.S.C. §§ 1021-31; 29 C.F.R. §§ 2520.101-2520.107.1.  Plaintiffs assert that during the Class Period, Defendants "made direct and indirect communication with the Plan's [P]articipants including statements regarding investments in Company Stock," including "SEC filings, annual reports, press releases, and Plan documents."  (Dkt. [58] at ¶ 110).  During the Class Period, SunTrust's SEC filings were incorporated into and part of the Plan's SPDs.  (Id.).

As an initial matter the Court must determine whether all the Defendants were "acting as a fiduciary (that is, were performing a fiduciary function) when taking the action subject to complaint."  Pegram, 530 U.S. at 226.  A defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue."  Cotton v. Mass. Mut. Life Ins. Co.,

402 F.3d 1267, 1277 (11th Cir. 2005).  Plaintiffs' Complaint acknowledges that

"[t]he responsibility for communicating with Participants about Plan-related

matters, including the providing of information concerning the investment

option[s] offered to Participants, lay primarily with the Benefits Plan

Committee Defendants." (Dkt. [58] at ¶ 79).  However, Plaintiffs' Complaint

also specifically identifies communications made by "SunTrust," as well as

Defendants Wells[12] and Chancy.  (See e.g., Dkt. [58] at ¶¶ 154, 162, 163, 185,

200, 201, 204).  Yet there is nothing in the Complaint to suggest that

communications by Defendants other than the Plan Committee Defendants were

made in regard to the Plan or directed toward Plan Participants.  See Varity

Corp. v. Howe, 516 U.S. 489, 505, 116 S. Ct. 1065, 1074, 134 L. Ed. 2d 130

(1996) (holding that corporation's statements were made in ERISA fiduciary

capacity because statements were intentionally connected to plan).  Plaintiffs

contend that "Defendants were clearly speaking as both Plan fiduciaries and as

corporate representatives when issuing the public statements . . . ."  (Dkt. [84] at

25).  However, simply asserting as much, without any factual underpinning for

the assertion, does not make it so.

---

[12] James M. Wells, III, is SunTrust's Chief Executive Officer ("CEO").  Wells
became Chairman of the Board in 2008, and served as a director of the Company since
2006.  (Dkt. [58] at ¶ 42).

AO 72A
(Rev.8/82)

As to the SEC filings incorporated into the SPDs provided to Plan

Participants, Defendants argue that such SEC filings cannot serve as the basis

for an ERISA claim.[13]  Even assuming that an ERISA claim may be based upon

false or misleading SEC filings incorporated into Plan documents, Plaintiffs'

Complaint fails to identify any false or misleading statements contained within

any of the incorporated SEC filings.  Therefore, Plaintiffs' False Information

Claim must fail.

B.      Participant Disclosure Claim

The second prong of Plaintiffs' Communication Claim is based upon

Defendants' failure "to provide participants with material information that

[D]efendants know or should know is needed to adequately protect the

participants' interests."  (Dkt. [84] at 26).  Defendants argue that "ERISA

---

[13] Courts have reached disparate outcomes on this question.  The court in
Mellot, held that plaintiff's claim of failure to disclose information to plan
beneficiaries failed because, "[t]he preparation of SEC filings, even if misleading and
incorporated by reference in required ERISA disclosures, is not a fiduciary act under
ERISA.  Mellot, 561 F. Supp. 2d at 1318; see also In re ING Groep, N.V. ERISA
Litigation, 1:09-CV-0400-JEC, at 18 (N.D. Ga. March 31, 2010) (stating
representations in SEC filings are not actionable under ERISA); but see Pedraza, 456
F. Supp. 2d at 1280-81 (reasoning that because SEC filings were incorporated into
documents required by ERISA, granting a motion to dismiss without examining the
SEC filings would be inappropriate); In re Washington Mutual, Inc. Sec., Derivative
& ERISA Litig., No. 2:08-md-1919 MJP, 2009 WL 3246994, at *9 (W.D. Wash. Oct.
5, 2009) ("Courts have recognized that the act of incorporating SEC filings into Plan
communications may give rise to ERISA liability.").

imposes no roving duty on fiduciaries to disclose everything that might be of interest to participants.  Rather, ERISA contains a carefully crafted set of statutorily prescribed disclosures . . . ."  (Dkt. [78] at 25).  Defendants' argument is not without support.  The court in Mellot, held that plaintiff's claim of failure to disclose information to plan beneficiaries failed because

> there is no general fiduciary duty of disclosure under ERISA.  The Court agrees with the circuit courts that have addressed the issue of ERISA disclosure: ERISA's fiduciary duty standards should not be expanded to include disclosure of information that is not explicitly required under ERISA.  See Sprague [v. General Motors Corp.], 133 F.3d [388, 405 (6th Cir. 1998)]; [Bd. of Trs. v.] Weinstein, 107 F.3d [139, 147 (2d Cir. 1997)]; Faircloth [v. Lundy Packing Co.], 91 F.3d [648, 657 (4thCir. 1996)].  To the extent an affirmative duty of disclosure exists, it is limited to the disclosure of information about the plan, plan benefits, or plan expenses.

561 F. Supp. 2d at 1318.

However, other decisions from this District have allowed such claims to proceed.  In CCE, the foundation of two of the plaintiff's claims was that "Defendants violated their fiduciary duties by failing to disclose material, non-public information regarding CCE's . . . activities to the Plan's participants." 2007 WL 1810211 at *11.  The court found that the defendants that were fiduciaries in regard to those claims "had a duty to disclose any fraudulent [acts] about which they knew or should have known."  Id. at 14; see also Hill v.

BellSouth Corp., 313 F. Supp. 2d 1361, 1368-69 (finding that in some circumstances an ERISA fiduciary will have an affirmative duty to disclose information to plan beneficiaries beyond the traditional duty to disclose).[14] Also, this Court in Woods, joined several of its sister courts[15] in holding that dismissal of a claim alleging a failure to fully inform plan participants at the motion to dismiss stage would be inappropriate.  396 F. Supp. 2d at 1377.

Plaintiffs allege that Defendants knew or should have known that SunTrust Stock was not a suitable and appropriate investment for the Plan as a result of the changing risk profile of SunTrust Stock investment and the Company's deteriorating financial position. (Dkt. [58] at ¶ 270).  Despite this knowledge, Defendants failed to provide Plan Participants with information to allow them to accurately evaluate their investment in SunTrust Stock.

---

[14] Citing cases from the First, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and D.C. Circuits, the Secretary of Labor recently noted: "ERISA fiduciaries are not only prohibited from misleading plan participants or allowing others to do so, but also have an affirmative duty to disclose material information that plan participants need to know to adequately protect their interests." Brief of *Amicus Curiae* Secretary of Labor in Support of Appellant at 24 In re Citigroup ERISA Litig. (No. 09-3804-cv 2d Cir.(Dkt. [84-3])).

[15] This Court cited In re AEP ERISA Litig., 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004); In re Excel Enegery, Inc. Securities, Derivative, & ERISA Litig., 312 F. Supp. 2d 1165, 1182 (D. Minn. 2004); In re Elec. Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658, 672-73 (E.D. Tex. 2004); Stein v. Smith; 270 F. Supp. 2d 157,174 (D. Mass. 2003).  Woods, 396 F. Supp. 2d at 1377.

AO 72A
(Rev.8/82)

Defendants maintain that to the extent there was a duty to disclose the risk

associated with SunTrust Stock, it was satisfied by the SPD which warns

Participants that the Employer Stock Fund is "a high risk investment" that

"carrie[s] more risk than the other investment options because it depends on the

performance of only one company."  (Dkt. [78] at 6).  However, this warning

contained in the SPD cannot satisfy Defendants' duty to disclose material

negative information to Plan Participants, particularly when, as Plaintiffs allege,

Defendants were aware of the deteriorating nature of the Company and its

Stock.  Based upon the allegations in the Complaint, the Court cannot say that

Plaintiffs have failed to state a claim for failure to disclose material information

to Plan Participants.  (See e.g. Dkt. [58] at ¶¶ 157, 162, 163, 185, 200, 204

(noting instances in which Defendants failed to disclose the true state of the

Company's finances or level of risk associated with investment in SunTrust

Stock)).

Even though Plaintiffs may have generally stated a claim as a matter of

law for failure to disclose, the Court must still determine whether that claim is

appropriate against all Defendants, as Plaintiffs allege.  The responsibility for

communicating with Participants about Plan-related matters rested primarily

with the Plan Committee Defendants, and therefore Plaintiffs' Communication

27

Claim based upon a failure to disclose is appropriate as to those Defendants.

However, the Court cannot say that these are the only Defendants who had a

fiduciary duty to ensure that Plan Participants were aware of the true state of the

Company's business practices.  ERISA contemplates both named fiduciaries

and *de facto* fiduciaries.  An individual is a *de facto* fiduciary with respect to an

EIAP to the extent

> (i) he exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or control
> respecting management or disposition of its assets, . . . or (iii) he has any
> discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A).  The Court cannot say at this stage that Plaintiffs have

failed to adequately allege that the Director Defendants and the Compensation

Committee Defendants are *de facto* fiduciaries with respect to the Plan who

have an obligation to disclose material negative information to Plan

Participants.  (See Dkt. [58] at ¶¶ 90-98 (describing basis for Director and

Compensation Committee Defendants' fiduciary status)).

Therefore, Plaintiffs' Participant Disclosure Claim states a claim as a

matter of law against the Plan Committee Defendants, the Director Defendants,

and the Compensation Committee Defendants.  Plaintiffs' Participant

Disclosure Claim against Defendant SunTrust, based upon the doctrine of

*respondeat superior*, fails as a matter of law and is **DISMISSED**. Defendants'

Motion to Dismiss [78] Plaintiffs' Communication Claims is **GRANTED**, **in**

**part**, and **DENIED**, **in part**.

**V.      Plaintiffs' Monitoring Claim and Plan Committee Disclosure Claim**
**(Count II)**

Count II of Plaintiffs' Complaint is brought against SunTrust, the

Director Defendants, the Compensation Committee Chairman and Defendant

Chancy.  (Dkt. [58] at ¶ 279).  Count II is best viewed as having two prongs, as

Plaintiffs appear to allege at least two distinct grounds for liability in Count II

of their Complaint.  One prong contends that the Monitoring Defendants failed

to supervise the Plan Committee by failing to evaluate their performance and

failing to remove individuals from the Plan Committee for their continued

imprudent investment of Plan assets in SunTrust Stock (the "Monitoring

Claim").  (Id. at ¶ 285(a), (d)).  The other prong of Count II asserts that the

Monitoring Defendants breached their fiduciary duties by "failing to ensure that

the monitored fiduciaries appreciated the true extent of SunTrust's risky and

inappropriate business practices, and the likely impact of such practices on the

value of the Plan's investment in SunTrust Stock"[16] (the "Plan Committee

---

[16] Defendants note that:

Plaintiffs contradict themselves and contend that, despite having been informed of the "true extent" of SunTrust's allegedly "inappropriate business practices," the Plan Committee failed to remove SunTrust [S]tock as an investment option and the "Monitoring Defendants" breached their duty "by standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and inaction with respect to Company stock."  In others words, the "Monitoring Defendants" either did or did not meet their unbounded duty to inform the Plan Committee, and the Committee failed to act on information they either did or did not have."

(Dkt. [78] at 27-28 (internal citations omitted)).

Plaintiffs' allegations would be problematic if both state of facts had to exist in order for Plaintiffs to prevail upon their Count II claims.  However, plaintiffs are allowed to, and often do, plead facts in the alternative, as the present Complaint does. Whether the Plan Committee was aware of the "true extent" of SunTrust's business practices is irrelevant to answering the question of whether the Monitoring Defendants had an obligation to remove the Benefits Plan Committee Defendants for imprudently investing the Plan's assets in Company Stock (the first prong of Count II).  The second prong of Count II however rests upon the assumption that the Plan Committee Defendants did not appreciate the "true extent" of SunTrust's practices, and the Monitoring Defendants are liable for not ensuring that they were fully informed of the Company's business practices.

To the extent that the Plan Committee did not have access to non-public information concerning the Company or its Stock, Plaintiffs' Participant Disclosure Claim would fail as to the Plan Committee Defendants.  The alternative scenarios created by the allegations in Plaintiffs' Complaint are: (1) the Plan Committee Defendants were not aware of the "true extent" of the Company's business practices, in which case Plaintiffs may be able to prevail on the Plan Committee Disclosure Claim, but would be unlikely to succeed on their Participant Disclosure Claim against the Plan Committee Defendants; and (2) the Plan Committee Defendants were aware of material non-public information concerning the Company and its Stock in which case Plaintiffs may prevail on their Participant Disclosure Claim, but may not prevail on the Plan Committee Disclosure Claim.

Disclosure Claim").  (Id. at ¶ 285(b)).[17]  This second prong, is best viewed as a

disclosure claim, because it alleges that the Monitoring Defendants possessed

material information about the Company that they failed to share with the Plan

Committee, rather than a classic ERISA monitoring claim.

A.    Monitoring Claim

Plaintiffs cannot maintain a claim of failure to monitor without

demonstrating that those to be monitored were acting imprudently.  The Court

has held that the Plan Committee did not breach its fiduciary duty of prudence

with regards to its investment of the Plan's assets in Company Stock.

Therefore, Plaintiffs' Monitoring Claim, which depends on the investment of

Plan assets in Company Stock being imprudent as a matter of law, fails along

with Plaintiffs' Investment Claim.  See Smith, 422 F. Supp. 2d at 1333

("Plaintiff cannot maintain a claim of failure to monitor when those to be

monitored were acting prudently."); CCE, 2007 WL 1812011 at *11 ("Because

---

[17] The Complaint also alleges that the Monitoring Defendants breached their
fiduciary duties through "the Company's failure to properly account for and to
disclose its exposure to losses tied to the illiquidity of mortgage-backed securities and
its business operations in the declining real estate market . . . ."  (Dkt. [58] at ¶
285(c)).  Presumably, this allegation refers to a failure to disclose necessary
information to the Plan Committee Defendants.  To the extent it refer to a failure to
disclose information to Plan Participants, it is duplicative of the Participant Disclosure
Claim.

the Court has determined that the Plan's investment in CCE stock was prudent as a matter of law . . . there can be no cause of action for failure to monitor a fiduciary's conduct with respect to that investment.").  Therefore, the first prong of Count II contending that the Monitoring Defendants failed to supervise the Plan Committee by failing to evaluate their performance and failing to remove individuals from the Benefits Plan Committee for their continued imprudent investment of Plan assets in SunTrust Stock, fails as a matter of law and is **DISMISSED**.

B.     Plan Committee Disclosure Claim

Construing the Complaint in the light most favorable to Plaintiffs, Count II also alleges a disclosure claim, based upon an alleged breach of fiduciary duty by the Monitoring Defendants for their failure to disclose material negative information about the Company to the Plan Committee Defendants. The Court in Smith noted that if members of the board of directors "had failed to disclose material information relating to [the defendant's] financial health, it may be plausible to argue that they should be liable for failing to inform the Investment Committee."  422 F. Supp. at 1327.  However, in that case the plaintiff's allegations of failure to disclose were too vague and conclusory to sustain a claim against the defendants.  Id.  The same cannot be said for Plaintiffs' claims

32

in this case.  The allegations set forth in Plaintiffs' Complaint are sufficient at

this stage to state a claim that the Monitoring Defendants possessed information

that they had an obligation to share with the Plan Committee.  (See e.g., Dkt.

[58] at ¶¶ 157, 162, 163, 185).

Other courts have also recognized that a fiduciary has a duty to disclose

to other fiduciaries material information that it knew, but others did not, if

necessary to protect the plan.  In setting forth conclusions of law as to

"Fiduciary Duties Under ERISA," one district court noted:

> 15. Even if not asked, ERISA fiduciaries must make "full and
> complete" disclosure and "communicate material facts affecting
> the interests of beneficiaries." Anweiler v. American Elec. Power
> Serv. Corp., 3 F.3d 986, 991 (7th Cir.1993); Bowerman v.
> Wal-Mart Stores, Inc., 226 F.3d 574, 590 (7th Cir.2000).
>
> 16. This duty to provide material information arises under ERISA
> § 404(a), 29 U.S.C. § 1104(a). Bowerman, 226 F.3d at 590. *This
> duty requires disclosure to other fiduciaries acting on behalf of the
> plan's beneficiaries*. Glaziers and Glassworkers Union Local No.
> 252 Annuity Fund, 93 F.3d at 1182 (3rd Cir.1996); Midwest
> Community Health Service, Inc. v. American United Life
> Insurance Co., 255 F.3d 374, 379 & 375-6 (7th Cir.2001).

Keach v. U.S. Trust Co. N.A., 313 F. Supp. 2d 818, 864 (C.D. Ill. 2004)

(emphasis added); see also Brief of *Amicus Curiae* Secretary of Labor in

Support of Appellant at 25 In re Citigroup ERISA Litig. (No. 09-3804-cv 2d

Cir.(Dkt. [84-3])) ("Fiduciaries likewise operate under an obligation to disclose their knowledge to other fiduciaries, particularly where necessary to correct misconceptions that at least some of the fiduciaries allegedly helped disseminate, as is alleged here." (citation omitted)); In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 662-63 (S.D. Tex. 2003) (finding that the complaint stated a claim for defendants' failure to inform co-fiduciaries about the company's actual financial status); In re WorldCom, Inc., 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity. Plaintiffs' allegation that [defendant] failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim.").

Defendants maintain that the claims in Count II of Plaintiffs' Complaint are only proper as to SunTrust's CFO, as he was the only one responsible for appointing the members of the Plan Committee.  (Dkt. [78] at 28-29).  This argument is better suited for Plaintiffs' Monitoring Claim, which the Court has already determined fails to state a claim as a matter of law.  As for the Plan Committee Disclosure Claim, the Court cannot say that Defendant Chancy,

SunTrust's CFO, was the only Defendant that had a fiduciary duty to communicate to the Plan Committee negative material information about the company.  Plaintiffs have adequately alleged that the Director Defendants and the Compensation Committee Chairman, as named or *de facto* fiduciaries, also had an obligation to disclose material negative information to the Plan Committee.  Therefore, Plaintiffs' Complaint sufficiently states a claim against the Director Defendants, the Compensation Committee Chairman, and Defendant Chancy, for failure to disclose material negative information about the company to the Plan Committee.  Plaintiffs' claims in Count II against Defendant SunTrust, based upon the doctrine of *respondeat superior*, fail as a matter of law and are **DISMISSED**. Defendants' Motion to Dismiss [78] Count II of Plaintiffs' Complaint is **GRANTED**, **in part**, and **DENIED**, **in part**.

## VI.    Co-Fiduciary Liability

Both Counts I and II contain allegations of co-fiduciary liability against the Defendants named therein.  Count I states that all the Defendants "breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the other Defendants failure to disclose crucial information regarding the severe mismanagement of the Company and the imprudence of the Company Stock."  (Dkt. [58] at ¶ 275).

Count II states that the "Monitoring Defendants are also liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the monitored fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them." (Id. at ¶ 286).

ERISA imposes liability upon a fiduciary for another fiduciary's breach of duty with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled some other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

The Court has found that Plaintiffs have sufficiently plead primary claims of breach of fiduciary duty against the Director Defendants, the Compensation Committee Defendants, the Plan Committee and Investment Sub-Committee Defendants.  Plaintiffs have not adequately plead any primary claims against

SunTrust and therefore cannot adequately plead any co-fiduciary liability as to those that Defendant.  29 U.S.C. § 1105(a).  The Court finds that Plaintiffs' Complaint adequately pleads that the remaining Defendants knew of the Company's problems and improper practices, but failed to take any effort to remedy existing breaches of fiduciary duty under ERISA.  Therefore, at a minimum Plaintiff has adequately alleged co-fiduciary liability under 29 U.S.C. § 1105(a)(3).  Defendants' Motion to Dismiss [78] Plaintiffs' claims of co-fiduciary liability set forth in Counts I and II is **GRANTED** as to Defendant SunTrust and is otherwise **DENIED**.

## Conclusion

Based on the foregoing, Plaintiffs' Motion for Oral Argument [102] is **DENIED**, and Defendants' Motion to Dismiss [78] is **GRANTED**, **in part**, and **DENIED**, **in part**.  The following claims are **DISMISSED** for failure to state a claim as a matter of law: Plaintiffs' Investment Claim, stated as part of Count I; Plaintiffs' False Information Claim, stated as part of Count I; and Plaintiffs' Monitoring Claim, stated as part of Count II.  Plaintiffs' Participant Disclosure Claim, stated as part of Count I, is properly alleged against the Director Defendants, the Compensation Committee Defendants, and the Benefits Plan and Investment Sub-Committee Defendants.  Plaintiffs' Benefits Plan

37

Committee Disclosure Claim, stated as part of Count II, is properly alleged against the Director Defendants, the Compensation Committee Chairman, and Defendant Chancy.  Plaintiffs have sufficiently alleged co-fiduciary liability against all Defendants other than SunTrust.

The remaining parties shall submit a proposed scheduling order to the Court within fourteen (14) days of the entry of this Order.

**SO ORDERED**, this  25th  day of October, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

38