IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: SUNTRUST BANK, INC., ERISA LITIGATION | : : : : : : : | CIVIL ACTION NO. 1:08-CV-3384-RWS |

## ORDER

### Background

After a trip to the Eleventh Circuit, this Employee Retirement Income Security Act ("ERISA") class action is again before this Court for consideration of Defendants' renewed motion to dismiss [Doc. 158]. In the Order of October 25, 2010 [Doc. 106 (published at In re SunTrust Banks, Inc. ERISA Litigation, 749 F. Supp. 2d 1365 (N.D. Ga. 2010)) (the "2010 Order")], this Court granted in part and denied in part Defendants' prior motion to dismiss [Doc. 106]. Defendants sought an interlocutory appeal [Doc. 107], and this Court granted that motion, certifying two questions to the Eleventh Circuit for interlocutory review [Doc. 122]. The Eleventh Circuit accepted the appeal and stayed the case until it issued its opinion in Lanfear v. Home Depot, Inc., 679 F.3d 1267 (11th Cir. 2012), in which materially identical questions were at issue. After Lanfear, the Eleventh Circuit issued its opinion in this case [Doc. 144]. Relevant to our efforts today, the Eleventh Circuit reversed this Court, concluding that

AO 72A
(Rev.8/82)

§ 404(a)(2) of ERISA, which exempts individual account plans ("EIAPs") that acquire and hold employer securities from ERISA's diversification requirement, does not have the effect of exempting fiduciaries of EIAPs that hold such stock from their duty of prudence under §404(a)(1). [Doc. 144]. The Eleventh Circuit further reversed this Court's holding that the EIAP fiduciaries had a duty to disclose nonpublic information to the participants of the plan. [Id.].

The result of the Eleventh Circuit's opinion, taken together with the 2010 Order, is that the prudence claim is now Plaintiffs' sole remaining viable claim.

## Factual Summary and Plaintiffs' Claims

The Plaintiffs in this case are participants in SunTrust Banks, Inc. 401(k) Savings Plan (the "Plan"), who held SunTrust stock in their 401(k) accounts and saw those accounts lose significant value when SunTrust's share price plummeted. As this Court recited in the 2010 Order, the facts alleged in Plaintiffs' consolidated amended complaint that are relevant to the Plaintiffs' prudence claim are as follows:

> Plaintiffs allege[] that Defendants, fiduciaries of the [the Plan], breached their fiduciary duties under ERISA by maintaining the Plan's large investment in SunTrust common stock in the Plan from May 15, 2007 to the Present (the "Class Period") when they knew or should have known that the stock was an imprudent retirement investment. As a result, the Plan suffered hundreds of millions of dollars in losses during the Class Period.
>
> Plaintiffs allege that Defendants failed to take any action to satisfy their fiduciary duty despite the clear imprudence of maintaining the Plan's

2

heavy investment in [Suntrust] stock due to . . . the Company's substantial exposure to subprime mortgage loan losses . . . .

The Plan is sponsored by SunTrust and is a defined contribution plan . . . under ERISA. . . . [T]he Plan was converted from an employee stock ownership plan ("ESOP") with 401(k) features to a 401(k) plan with ESOP features.

. . . One of the [Plan] options[1] available to [participants] was the SunTrust Common Stock Fund (the "Employer Stock Fund"), which was designed to invest primarily in SunTrust stock. . . . As of December 31, 2006, approximately 49% of the Plan's total investments were invested in SunTrust Stock.

. . . .

[In their prudence claim, Plaintiffs] assert[] that the Defendants failed to prudently manage the Plan and the Assets of the Plan. Count I asserts that all of the Defendants were fiduciaries of the Plan, in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.  As fiduciaries, Plaintiffs assert that Defendants were responsible for ensuring that all investments in Company Stock in the Plan were prudent and consistent with the purpose of the Plan.

Plaintiffs allege that as early as 2004, experts expressed fears that relaxed lending practices were increasing risks for borrowers and lenders in overheated housing markets.  Despite the warning signs, Plaintiffs maintain that SunTrust moved away from its traditional business practices towards the subprime housing market, originating and retaining risky residential mortgage loan products.  These risky products disregarded borrower qualifications, particularly the borrower's ability to repay the loan.  This move altered the Company's risk profile.

---

[1] According to the Plan documents attached to the amended consolidated complaint, the Employer Stock Fund was one of 17 investment options given to Plan participants.

AO 72A
(Rev.8/82)

> Plaintiffs maintain that SunTrust's change of direction ultimately resulted in steady, negative valuations of the Company, layoffs of thousands of employees, and tremendous losses to the Plan. Plaintiffs' core allegation is that the Company's stock became an overly risky and inherently imprudent investment option for the Plan because of the Company's heavy involvement in the "toxic" subprime real estate market. [Plaintiffs claim that a]s a result of SunTrust's fiduciary failures, the Plan's Participants have lost hundreds of millions of dollars.

2010 Order, 749 F. Supp. 2d at 1367-71 (quotations, citations, alterations, and certain defined terms omitted).

## **Legal Standard**

Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations and citations omitted). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quotations and citations omitted). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

4

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions, Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009), nor to "[t]hreadbare recitals of the elements of a cause of action[] supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

Prudence Claims under ERISA and *Lanfear v. Home Depot, Inc.*

For an overview of ERISA and a discussion of an employer's fiduciary capacity, which does not appear to be subject to dispute, see the 2010 Order, 749 F. Supp. 2d at 1371-72. For our purposes here, ERISA requires plan fiduciaries to exercise prudence over plan assets. According to 29 U.S.C. § 1104(a)(1),

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

In the 2010 Order, this Court dismissed Plaintiffs' prudence claim after concluding that it was actually a failure-to-diversify claim which cannot be brought against the fiduciaries of an ESOP under 29 U.S.C. § 1104(a)(2). Under materially identical facts in Lanfear, the Eleventh Circuit disagreed. The Eleventh Circuit explained that, diversification aside, the Lanfear plaintiffs' claim – like the Plaintiffs'

5

claim here – is a prudence claim wherein they asserted that "[Company] stock was an imprudent investment and for that reason the defendants had a duty to divest the Plan of the stock and stop purchasing it." Lanfear, 679 F.3d at 1276.

The Eleventh Circuit then addressed the question of how courts should review the decisions of ESOP fiduciaries who continue to hold company stock while that stock loses value. First the court acknowledged the tension between the duty of typical ERISA fiduciaries to diversify while ESOP fiduciaries are required to concentrate participants' funds in a single stock. Id. at 1278 (noting that ESOP directors are essentially required not to diversify, which may be imprudent). As a result, according to the Eleventh Circuit, ESOP fiduciaries' actions should be measured under a more forgiving standard where they enjoy a presumption of prudence and are held liable only if the court determines that they have abused their discretion. Id. at 1279 (adopting the Third Circuit's ESOP prudence claim standard from Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995)). This does not mean, however, that an ERISA/ESOP plaintiff asserting a prudence claim must demonstrate that the company was on the "brink of financial collapse" when the fiduciary should have sold the shares. Lanfear, 679 F.3d at 1280. Rather,

> [a]lthough a fiduciary is generally required to invest according to the terms of the plan, when circumstances arise such that continuing to do so would defeat or substantially impair the purpose of the plan, a prudent fiduciary should deviate from those terms to the extent necessary.

6

AO 72A
(Rev.8/82)

> Because the purpose of a plan is set by its settlors (those who created it), that is the same thing as saying that a fiduciary abuses his discretion by acting in compliance with the directions of the plan only when the fiduciary could not have reasonably believed that the settlors would have intended for him to do so under the circumstances. That is the test.

Id.

## **Discussion**

Accordingly, in order for Plaintiffs to state a claim that Defendants violated their duty of prudence, they must allege that, under the circumstances that the fiduciaries faced, the settlor would have intended that they sell off the Plan's SunTrust stock – an allegation that appears nowhere in the amended consolidated complaint. Indeed, the lengthy complaint dedicates a great many words to its recitation of how SunTrust mishandled its mortgage portfolio[2] but says nothing about the plan sponsor's intent other than to assert that the purpose of the Plan was "to enable Participants to save for retirement." [Doc. 63 at 29]. Accordingly, on its face the complaint fails to state a prudence claim under ERISA.

---

[2] For the record, this Court notes that claims related to mismanagement at SunTrust generally cannot form the basis of a prudence claim under ERISA. See 29 U.S.C. § 1002(21)(A) (stating that a person is a plan fiduciary only when exercising discretionary authority or control of a plan). In other words, just because the officers/directors who purportedly mismanaged SunTrust were also Plan fiduciaries does not mean that they assumed ERISA liability for their alleged mismanagement of the bank.

AO 72A
(Rev.8/82)

However, because Lanfear did not exist at the time that Plaintiffs drafted their complaint, for the purpose of this discussion this Court will assume that the complaint does claim that, given the circumstances that are alleged in the complaint, the settlor would have intended for the fiduciaries to sell the company stock and determine whether that allegation is sufficient to state a claim.  At the outset of this discussion, this Court points out that this type of claim, where ERISA plan participants assert that fiduciaries imprudently failed to dump ESOP stock in the face of a company's significant business hardship, have fared poorly.  See, e.g., Majad ex rel. Nokia Retirement Sav. and Inv. Plan v. Nokia, Inc., 2013 WL 3111263 at *2 (2d Cir. 2013) (affirming district court's dismissal of ERISA ESOP prudence claim after Nokia's share price dropped 70%); White v. Marshall & Ilsley Corp., 714 F.3d 980, 988 (7th Cir. 2013) (affirming dismissal of prudence claim after share price dropped 54%); In re Citigroup ERISA Litigation, 662 F.3d 128, 141 (2d Cir. 2011) (50% drop); Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995) (almost 80% drop); Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243 (5th Cir. 2008) (40% drop).

Applying the Eleventh Circuit's Lanfear test is not an entirely straightforward endeavor.  The first question is what the Eleventh Circuit means when it refers to the "settlor" of the Plan.  In this case the settlor is SunTrust.  If one were to ask SunTrust (either during its struggles with the mortgage crisis or at the time that it drafted the

plan) whether in these circumstances it would want the fiduciaries to dump large amounts of SunTrust stock onto the market, considering the fact that those fiduciaries are company insiders who would have to at least consider whether securities law would require them to publicly disclose that they are selling their ERISA plan SunTrust stock because they lack faith in the ongoing viability of company, the answer is obvious, and Plaintiffs have no chance of prevailing.

Of course, the Lanfear test is adapted from "principles of trust law," Lanfear, 679 F.3d at 1280, under which the settlor's intent is determined solely from the unambiguous language of the trust instrument itself; see, e.g., Golden Gate Yacht Club v. Societe Nautique De Geneve, 907 N.E.2d 276, 280 (N.Y. 2009); Rachal v. Reitz, 403 S.W.3d 840, 844 (Tex. 2013).

The Plan documents are attached to the amended, consolidated complaint. [Doc. 63]. One of the main Plan documents is the SunTrust Banks, Inc. 401(k) Plan Investment Policy Statement (Policy Statement). [Id., Exh. A]. Under the heading, "Purpose of Plan," the Policy Statement says the following:

> The primary purpose of the Plan is to encourage eligible employees to set aside a portion of their compensation on a pre-tax basis to provide income for their retirement. An additional purpose of the Plan is to provide eligible employees with beneficial ownership of Employer Stock through the Employer Stock Fund of the Plan, which constitutes an employee stock ownership plan component within the Plan. . . . The Plan is for the exclusive benefit of the Plan's participants and their beneficiaries. SunTrust Banks, Inc. and its participating affiliates and subsidiaries assist

> Plan participants in accumulating funds for retirement by making matching contributions on their behalf .

[Id. at 1].

Under the heading "Investment Selection" the Policy Statement says:

> The Plan will contain an Employer Stock Fund in order to fulfill Stock fund's primary purpose of providing beneficial ownership of Employer Stock.  In addition, for the portions of accounts which are eligible for participant investment direction, the Plan intends to provide an appropriate range of investment options that span the risk/return spectrum. Further, the Plan investment options will allow Plan participants to construct portfolios consistent with their unique individual circumstances, goals, time horizons, and tolerance for risk.

[Id. at 9].

Accordingly, we learn from the Policy Statement that the purpose of the entire 401(k) program is to provide assistance to employees in saving for retirement.  On the other hand, the purpose of the ESOP component of the plan is to encourage and enable employees to own SunTrust stock.  Taken together, these two manifestations of intent do little to enlighten the question of under what circumstances the settlor would have intended for the fiduciary to sell off the SunTrust shares.  However, under the heading "Further Guidelines" and the subheading "Employer Stock Fund" the settlor speaks *directly* to the fiduciaries about the ESOP:

> Ordinarily, the Committee should assume that retaining Employer Stock as a Plan investment within the Employer Stock Fund is reasonable and prudent.  Ordinary stock price fluctuations and declines in the value of Employer Stock are to be expected and those conditions alone are

10

> generally not sufficient for an ESOP fiduciary to consider suspending or ceasing Employer Stock investments within the Employer Stock Fund.
>
> If the Committee becomes aware of extraordinary circumstances that indicate that continuing to provide an Employer Stock as an investment alternative would be an abuse of discretion (e.g., if the Committee were to become aware that the Company's dire financial situation would likely cause it to cease being a viable going concern), then the Committee should seek outside counsel's assistance and advice as to carrying out its fiduciary duties with respect to Plan participants and beneficiaries.

[Id. at 8].

This language indicates that the settlor did, in fact, intend for the fiduciaries to wait until the company was "on the brink of financial collapse," Lanfear, 679 F.3d at 1280, and even then the settlor instructs only that outside counsel should be consulted for advice and not that company shares in the Plan should be sold.  Moreover, in the main plan document entitled "SunTrust Banks, Inc. 401(k) Plan," in delineating the powers of the committee that serves as the Plan fiduciary, the settlor included the following: "The Committee will have primary responsibility for administering the Plan and all powers necessary to enable it to properly perform its duties . . . but will have no authority to limit, expand or remove the Employer Stock Fund."  [Exh. C to Doc. 63 at 77].

Other plan documents likewise indicate that the settlor fully understood and approved of the fact that the ESOP component of the 401(k) plan was a high-risk

11

investment for Plan participants. The Summary Plan Description, [Doc. 63, Exh. B ("SPD")], contains the following descriptions of the Employer Stock Fund:

> The 401(k) Plan includes the [Employer] Stock Fund, which is an employee stock ownership plan ("ESOP"). This Fund provides another way for you to be a SunTrust stockholder, sharing in the financial rewards that your efforts help produce for the company. Keep in mind, however, that investing in a single stock of one company is a high risk investment. Consider diversifying your account to avoid large losses.

SPD at 3.

> And:
>
> [The Employer Stock Fund] is designed to invest primarily in the Common Stock of SunTrust Banks, Inc., with only a small amount of cash (usually less than 1%) for Liquidity purposes. The Fund seeks growth through the concentrated investment in SunTrust Common Stock. . . .This Investment carries more risk than the other investment options because it depends on the performance of only one company. It may experience very large increases in value or very large decreases in value.
>
> Share Price Volatility -Very high

Id. at 16.

> And, under the heading "Diversification of SunTrust Common Stock:"
>
> Investing in the stock of a single company carries a high risk, as an economic downturn shows – the [ESOP] is made available to 401(k) Plan participants for a number of reasons. First, many employees want to invest in the company where they work and share in the earnings they help create. Second, lump sum total distributions in SunTrust Common Stock may provide significant tax advantages to participants, and participants may receive dividend distributions even when distributions from other investment funds are not available. Third, the company receives a tax deduction for the dividends it pays on the shares of

> [company stock] held in the Plan. This deduction has allowed SunTrust to increase the matching contribution for participants. While the [ESOP] may provide certain advantages not available with other investment funds, it is very important for you to understand that investing a significant amount of your account in the [ESOP] could cause a loss of a substantial portion of your savings if the stock price goes down. You should consider spreading your risk over a number of different investments to help offset the risk of loss in any one investment.

Id. at 22.

From the settlor's strong language that essentially prohibits the fiduciaries from selling company stock along with the repeated warnings to Plan participants, this Court infers that the settlor intended that participants would have the opportunity to purchase SunTrust stock while understanding that to do so exclusively (or primarily) would expose their assets to great risk. Further, given the fact that the Plan offered many different investment opportunities providing the full range of investment risk, this Court finds no indication from the Plan documents that the settlor ever contemplated that the Employer Stock Fund shares be sold, and the settlor expressly considered even the worst-case scenario of SunTrust being in such a dire financial situation that it would likely cease to be a viable going concern. The settlor understood the dangers inherent in the Employer Stock Fund and was willing to allow the fully-informed Plan participants to take that risk if they chose to do so.

Even if this Court were to accept that there was a point at which the settlor would agree that the shares be sold, this Court finds that the point was never reached.

AO 72A
(Rev.8/82)

The Seventh Circuit – which like the Eleventh Circuit has adopted the Moench test – has questioned whether it is even possible to establish that the fiduciaries of an ESOP violated ERISA for holding onto company stock during an economic downturn.  In White v. Marshall & Ilsley Corp., 714 F.3d 980 (7th Cir. 2013), the court affirmed a district court's dismissal of a prudence claim against ESOP fiduciaries materially similar to that raised here.  The problem the court found with the plaintiff class' claim was that it would have to rely on one of two impossible theories: "the untenable premise that employers and plan fiduciaries have a fiduciary duty either to outsmart the stock market, which is groundless, or to use insider information for the benefit of employees, which would violate federal securities laws." Id. at 982.  As noted by the Eleventh Circuit in Lanfear, Plan participants "have no right to insist that fiduciaries who are corporate insiders use inside information to the advantage of the participants." Lanfear, 679 F.3d at 1282.  Accordingly, Plan fiduciaries must rely on only public information to determine when and if it is appropriate to sell Plan assets, which means that the fiduciaries are like any outside investor.  The Plaintiffs cannot, in the absence of insider information, claim that the stock was overvalued or that the fiduciaries knew it was overvalued because the value of a stock is what the market says it is based on the information that the market (and thus the fiduciary) have.  "A trustee is not imprudent to assume that a major stock market . . . provides the best estimate of the

14

value of the stocks traded on it that is available to him." <u>Summers v. State Street Bank & Trust Co.</u>, 453 F.3d 404, 408 (7th Cir. 2006); <u>see also</u> <u>id.</u> (noting that it would be "hubris" for a fiduciary "to think it could predict [a company]'s future more accurately than the market could").

Specific to this case, in considering whether to hold a certain investment or sell it, a fiduciary must consider the interests of the plan participants, and this Court does not believe that it would be unreasonable to assume that many of the SunTrust Plan participants were at least several years from retirement. As such, it is impossible to say that the opportunity to purchase SunTrust shares at historically low prices was not in the best interests of those participants, especially when considering the fact that share prices across the board were generally falling during the Class Period. Many financial institutions were severely affected by the mortgage crisis which had a spillover effect on the entire economy. Put simply, even if the fiduciaries had determined that it was time to dump Plan stock, there were no obvious investments that would clearly perform better than any other. While Plaintiffs focus on the decrease in SunTrust stock since mid-2007, it is important to recognize that shares purchased for the Employer Stock Fund during 2009, for example, are doing quite well.

SunTrust recovered. While its share price still hovers around forty percent of the heady days of the early 2000's, this Court finds that the volatility of the stock

15

AO 72A
(Rev.8/82)

during the Class Period was not outside that which the settlor would have found acceptable given the language of the Plan documents. Accordingly, this Court concludes that Plaintiffs have failed to state a claim for relief and Defendants' motion to dismiss Plaintiffs' prudence claim must be granted.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss, [Doc. 158], is **GRANTED** and Plaintiffs' sole remaining claim (Count I), is hereby **DISMISSED** and this case is **CLOSED**.

**IT IS SO ORDERED,** this   26th   day of September, 2013.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)