# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
| --- | --- | --- |
| IN RE SUNTRUST BANKS, INC. | ) | CIVIL ACTION FILE |
| ERISA LITIGATION | ) | NO. 1:08-CV-3384-RWS |
|  | ) |  |
|  | ) |  |

## MOVANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## <u>MOTION FOR CLASS CERTIFICATION</u>

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS.................................................................3

III.  ARGUMENT.......................................................................................5

A.  Plaintiffs' Breach of Fiduciary Duty Allegations Under ERISA are Uniquely Appropriate for Class Treatment..........................................5

B.  The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a) ..........................................................................8

1.  The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1) ....................................................................................9

2.  The Case Satisfies the "Commonality" Requirement of 23(a)(2) ................................................................................11

3.  Movants' Claims Satisfy the "Typicality" Requirement of 23(a)(3) ................................................................................16

4.  Movants Will Fairly and Adequately Protect the Interest of the Class, Satisfying Rule 23(a)(4)................................................18

5.  The Proposed Class is Adequately Defined and Clearly Ascertainable..............................................................................20

D.  The Class May be Properly Certified Under Rule 23(b)(1)...............21

1.  Certification Under Rule 23(b)(1)(B) is Most Appropriate .....21

2.  Certification is Also Appropriate under Section 23(b)(1)(A) ..22

E.  Movants' Chosen Counsel Will Adequately Represent the Class......23

IV.  CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)..................................................................9

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ........................................17

*Belton v. Ga.*,
No. 10-cv-0583-RWS, 2011 WL 925565 (N.D. Ga. Mar. 14, 2011).....10, 16, 18

*Boyd v. Coventry Health Care, Inc.*,
299 F.R.D. 451 (D. Md. 2014) ...........................................2

*Brieger v. Tellabs*,
245 F.R.D. 245 (N.D. Ill. 2007) .........................................19

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
562 F. App'x 782 (11th Cir. 2014).....................................20

*Diakos v. HSS Sys., LLC*,
No. 14-cv-61784, 2015 WL 5921585 (S.D. Fla. Sept. 29, 2015) ......................10

*DiFelice v. U.S. Airways, Inc.*,
235 F.R.D. 70 (E.D. Va. 2006)......................................15, 17

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985) ...........................................15

*In re Enron Corp.*,
No. 01-cv-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006) ...................17, 23

*Eslava v. Gulf Tel. Co.*,
No. 04-cv-297, 2007 WL 2298222 (S.D. Ala. Aug. 7, 2007).......................7, 16

*Fifth Third Bancorp v. Dudenhoeffer*,
134 S. Ct. 2459 (2014)..................................................5

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)................................................................................7

*GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*,
  895 F.2d 729 (11th Cir. 1990) .............................................................15

*Jones v. Novastar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009).........................................................19

*Knight v. Lavine*,
  No. 12-cv-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013)..................22

*Kuper v. Iovenko*,
  66 F.3d 1447 (6th Cir. 1995) ..................................................................8

*LaRue v. DeWolff, Boberg & Assoc., Inc.*,
  552 U.S. 248 (2008).........................................................................7, 15

*Little v. T-Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012) ..............................................................9

*Mass. Mut. Life Ins. Co. v. Russell*,
  105 S. Ct. 3085 (1985)............................................................................7

*In re Merck & Co., Inc. Sec., Der. & ERISA Litig.*,
  MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ..................23

*In re Nortel Networks, Corp. "ERISA" Litig.*,
  No. 03-md-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)..................19

*Paschal v. Child Dev., Inc.*,
  No. 12-cv-0184, 2014 WL 112214 (E.D. Ark. Jan. 10, 2014)..........23

*Piazza v. Ebsco Indus., Inc.*,
  273 F.3d 1341 (11th Cir. 2001) ........................................9, 11, 18, 21

*In re Piedmont Office Trust, Inc. Sec. Litig.*,
  264 F.R.D. 693 (N.D. Ga. 2010) .........................................................21

*Rosario v. King & Pince Seafood Corp.*,
  Nos. 204-cv-036, 205-cv-044, 2006 WL 2367130
  (S.D. Ga. March 7, 2006) ...................................................12, 19, 21

*Sanchez-Knutson v. Ford Motor Co.*,
No. 14-cv-61344, 2015 WL 6395040 (S.D. Fla. Oct. 6, 2015)..........................12

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3rd Cir. 2009)...................................................................7, 22

*In re Schering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) ..............................................................................8

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007)........................................................10, 18

*Sharf v. Fin. Asset Resolution, LLC*,
295 F.R.D. 664 (S.D. Fla. 2014).......................................................................19

*Shepherd v. Vintage Pharm., LLC*,
No. 11-cv-3805, 2015 WL 6956767 (N.D. Ga. Nov. 4, 2015) ...................11, 12

*Smith v. Aon Corp.*,
238 F.R.D. 609 (N.D. Ill. 2006) .........................................................7, 17, 22, 23

*Stanford v. Foamex L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009) .......................................................................17

*Tibble v. Edison, Int'l*,
135 S. Ct. 1823 (2015)........................................................................................6

*In re Tyco, Int'l, Ltd. Multidistrict Litig.*,
No. 02-md-1335, 2006 WL 2349338 (D.N.H. Aug. 15, 2006).........................22

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).......................................................................................12

*In re Wilmington Trust Corp.*,
No. 10-cv-1114, 2013 WL 4757843 (D. Del. Sept. 4, 2013) ..............................2

*Woods v. Southern Co.*,
396 F. Supp. 2d 1351 (N.D. Ga. 2005)................................................................8

*Yost v. First Horizon Nat. Corp.*,
No. 08-cv-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011)................22, 23

*In re YRC Worldwide, Inc. ERISA Litig.*,
   No. 09-cv-2593, 2011 WL 1303367 (D. Kan. Apr. 6, 2011) .............................17

**Federal Rules**

FED. R. CIV. P. 10(c) .................................................................24

FED. R. CIV. P. 12 ......................................................................3

FED. R. CIV. P. 23 .............................................................*passim*

FED. R. CIV. P. 23(a) .........................................................*passim*

FED. R. CIV. P. 23(a)(1).........................................................10, 20

FED. R. CIV. P. 23(a)(2).............................................................12

FED. R. CIV. P. 23(a)(3).........................................................17, 18

FED. R. CIV. P. 23(a)(4).....................................................18, 19, 23

FED. R. CIV. P. 23(b) ...........................................................2, 21

FED. R. CIV. P. 23(b)(1) ................................................2, 21, 22, 23

FED. R. CIV. P. 23(b)(1)(A) .....................................................21, 23

FED. R. CIV. P. 23(b)(1)(B) .................................................21, 22, 23

FED. R. CIV. P. 23(b)(2) .............................................................21

FED. R. CIV. P. 23(b)(3) .............................................................21

FED. R. CIV. P. 23(d) ..................................................................3

FED. R. CIV. P. 23(g) ...............................................................25

FED. R. CIV. P. 23(g)(1)(A) .....................................................23, 24

FED. R. CIV. P. 30(b)(6) .....................................................11, 14, 25

**Statutes**

Employee Retirement Income Security Act of 1974......................................*passim*

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)........................................................3

ERISA § 404(a), 29 U.S.C. § 1104(a) ...............................................................6

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).......................................................2

ERISA § 409, 29 U.S.C. § 1109 ....................................................................6, 7

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).................................................*passim*

Freedom of Information Act, 5 U.S.C. § 552 .......................................................25

**Other Authorities**

The Advisory Committee Notes to the 1996 Amendment of FED. R. CIV. P.
    23(b)(1)(B).........................................................................................6

Uniform Prudent Investor Act § 2(c) (1994) .........................................................6

## I.    INTRODUCTION

Plaintiffs allege class-wide derivative claims under the Employee Retirement Income Security Act of 1974 ("ERISA") of the type routinely certified in this Circuit and by courts throughout the country. *See* Exhibit 1 to the accompanying Declaration of Mark K. Gyandoh (the "Gyandoh Decl.") (a non-exhaustive list of 54 decisions certifying classes in directly analogous company stock class actions).[1]  Specifically, Movants[2] seek to certify the following class pursuant to FED. R. CIV. P. 23(a) and (b)(1):

> All persons, other than Defendants and members of their immediate families, who were participants in or beneficiaries of the SunTrust Banks, Inc. 401(k) Savings Plan (the "Plan") at any time between May 15, 2007 and March 30, 2011, inclusive (the "Class Period") and whose accounts included investments in SunTrust common stock ("SunTrust Stock") during that time period.

Moreover, Movants respectfully request that this Court appoint them as representatives for the certified Class, and appoint their counsel as Class Counsel.

---

[1] Class certification is so routinely granted in this type of ERISA action that defendants have stipulated to class certification. *See, e.g.*, *Pfeil et al. v. State Street Bank*, No. 09-cv-12229 (E.D. Mich.).  *See also In re Sears, Roebuck and Co. ERISA Litig.*, No. 02-cv-8324 (N.D. Ill.) (defendants did not oppose plaintiffs' motion for class certification).

[2] Ten plaintiffs were named in the Plaintiff's Amended Consolidated ERISA Class Action Complaint (Dkt. No. 176) (the "Complaint").  "Plaintiffs" refers to all Plaintiffs.  "Movants" refers only to plaintiffs Dennis Erwin, William B. Fisch, Donna Smothermon, Chrys Trau, and Demetria Whisby who are filing this motion and seeking to be appointed as representatives of the certified Class.

The Court previously appointed the proposed Class Counsel to serve as Interim Co-Lead Class Counsel and Interim Liaison Class Counsel (*see* Dkt. No. 53).

Plaintiffs allege that Defendants – fiduciaries of the Plan – breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan ("Participants") by, *inter alia*, retaining SunTrust Stock as an investment option in the Plan when a reasonable fiduciary using the "care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters would use" would have done otherwise. *See* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  As discussed below, Plaintiffs' breach of fiduciary duty claims not only satisfy the requisites of Rules 23(a) and (b), but are distinctly well-suited for class treatment.  Indeed, as noted above, courts routinely certify these types of ERISA claims as class claims.  *See, e.g.*, *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1).... [G]iven the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a [Rule 23] (b)(1) class").[3]

---

[3] *Compare In re Wilmington Trust Corp.*, No. 10-cv-1114, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims).  Movants seek class certification because it will likely afford Participants the best possible representation and the best protection of their

As demonstrated below, Movants satisfy all requirements for class certification.

## II.    STATEMENT OF FACTS

Plaintiffs' pending claims, upheld on a Rule 12 motion, focus upon Defendants' conduct as Plan fiduciaries pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period.  As the fiduciaries of the Plan, Defendants were responsible for loyally and prudently administering the Plan and managing its assets.  Plaintiffs' claims revolve around the common allegation that Defendants breached those duties by offering SunTrust Stock as a retirement investment when it was imprudent to do so, causing hundreds of millions of dollars in losses to the Plan and to the Participants who held SunTrust Stock in the Plan during the proposed Class Period.

In particular, Plaintiffs allege that Defendants knew or should have known that SunTrust's stock was an imprudent retirement investment given the severe financial problems that SunTrust was experiencing, which caused SunTrust's stock price to decline significantly from more than $77 per share to less than $28 per share during the proposed Class Period, taking with it hundreds of millions of

interests (including via the Court's Rule 23(d) supervisory authority).  *See, e.g.,* *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (finding plaintiff's failure to proceed under Rule 23 meant the case was "without the benefit of a procedural mechanism for the protection of the interested parties").  Movants do not concede that class certification is required for them to prosecute claims on behalf of the Plan and all Participants.

dollars in valuable retirement assets.  SunTrust was experiencing a sea-change in its basic risk profile and business prospects caused in part by corporate mismanagement.  In addition, SunTrust's business was being decimated by other factors, including that:  (1) SunTrust was experiencing hundreds of millions of dollars of losses resulting from high-risk loans that SunTrust made which were secured by residential real estate in a plummeting market; (2) SunTrust was exposed to large losses on residential real estate-secured loans where SunTrust's remedies in the case of customer delinquencies or origination fraud were inadequate and ineffective; (3) during the Class Period, except for the first quarter of fiscal year 2009, SunTrust maintained inadequate loan loss reserves in connection with residential real estate-backed loans, failed to properly record losses for impaired assets, and lacked adequate internal controls to prevent the Company from under-reporting its impaired assets, all of which artificially inflated SunTrust's reported earnings and made its financial statements unreliable; (4) throughout the Class Period, SunTrust portrayed itself as an unusually conservative banking institution when that was not the case, and SunTrust defiantly and unjustifiably rejected and criticized analysts and others who questioned the collectability of the loans held or originated by the Company; (5) during the Class Period, by no later than the fourth quarter of fiscal year 2008, SunTrust was at risk of failure as an independent institution; and (6) as a result of the foregoing,

SunTrust's stock price was both artificially inflated and unduly risky for retirement savings during the Class Period.   Complaint ¶ 9.   These factors, separately and together, had a severe negative effect on the price of SunTrust Stock, resulting in massive losses to the Plan and the Participants.   In refusing to dismiss Plaintiffs' Complaint, the Court sustained Plaintiffs' allegations on this point, noting:

> The Court finds that Plaintiffs have sufficiently pled alternative options as required by Dudenhoeffer.[4]   The Court agrees with Plaintiffs that it would be premature to dismiss Plaintiffs' Non-Public Information Claim at this stage in the proceedings, prior to fact and expert discovery.   The Court is unwilling to find that Plaintiffs' alternative options fail as a matter of law without development of the factual record and the aid of expert testimony.

Motion to Dismiss Decision (Dkt. No. 194) at 10.   Simply stated, SunTrust Stock constituted an imprudent investment option for the Plan during the Class Period, and Defendants are liable for the Plan's losses resulting from their fiduciary breaches in offering SunTrust Stock notwithstanding its imprudence.

## III.   ARGUMENT

### A.   Plaintiffs' Breach of Fiduciary Duty Allegations Under ERISA are Uniquely Appropriate for Class Treatment

Plaintiffs' claims are particularly well-suited for class action treatment. Indeed, ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring a civil action derivatively on behalf of a plan for appropriate relief under ERISA Section 409.   ERISA Section 409, in turn, provides that ERISA fiduciaries

---

[4] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014).

"shall be personally liable to make good to such plan any losses to the plan resulting from each [fiduciary] breach. . . ." 29 U.S.C. § 1109(a). The Advisory Committee Notes to the 1996 Amendment of FED. R. CIV. P. 23(b)(1)(B) specifically state that certification under Rule 23 is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries.

Pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a), ERISA fiduciaries must discharge their duties to a retirement plan and its participants and beneficiaries with the "care, skill, prudence, and diligence under the circumstances then prevailing." As part of this duty, ERISA fiduciaries must independently investigate, and continually monitor, the merits of the investment alternatives of a plan, including employer securities, to ensure that each investment is a suitable and proper option for the plan. This year the Supreme Court reaffirmed the ongoing fiduciary duty to monitor a plan's investment options in *Tibble v. Edison, Int'l*, 135 S. Ct. 1823 (2015), reiterating that ERISA fiduciaries have "a continuing duty to monitor trust investments and remove imprudent ones." *Id.* at 1828. In so holding, the Supreme Court referenced treatises and seminal decisions confirming the duty.[5]

---

[5] *Tibble* cites with approval the Uniform Prudent Investor Act (1994), which enshrines trust law and recognizes that "the duty of prudent investing applies both to investing and managing trust assets…." 135 S. Ct. at 1828 (quoting Nat'l Conference of Comm'rs on Uniform State Laws, Uniform Prudent Investor Act § 2(c) (1994)). The official comment explains that "'[m]anaging' embraces monitoring, that is, the trustee's continuing responsibility for oversight of the

Here, Plaintiffs allege Defendants' Class Period actions and omissions violated ERISA, resulting in extensive losses to the Plan and its Participants.

"Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citation omitted). Consistent with this precept, class actions are recognized as "an efficient and appropriate means of dealing with cases in which plan participants … bring [an] action against plan fiduciaries pursuant to ERISA." *Smith v. Aon Corp.*, 238 F.R.D. 609, 613 (N.D. Ill. 2006). This is so, in part, because of the representative nature of ERISA § 502(a)(2) claims, as discussed above. *See also Mass. Mut. Life Ins. Co. v. Russell*, 105 S. Ct. 3085, 3090 n.9 (1985).[6] Since the only relief available under ERISA § 502(a)(2) is to the plan, a breach of fiduciary duty claim, like Plaintiffs' claims here, is by definition a representative claim. *See, e.g.*, *Eslava v. Gulf Tel. Co.*, No. 04-cv-297, 2007 WL 2298222, at *1 (S.D. Ala. Aug. 7, 2007) (discussing a claim

---

suitability of investments already made as well as the trustee's decisions respecting new investments." *Id*. § 2 comment.

[6] The Supreme Court's decision in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248 (2008), did not alter the representative nature of suits brought pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132. *See, e .g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3rd Cir. 2009) (holding that *LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized.").

for relief under ERISA § 502(a)(2) brought on behalf of a plan, and noting "[w]hile the claim may be filed by an individual, the relief that is available is not individualized").[7]

In this action, any recovery obtained by Plaintiffs will go to the Plan, to be held, allocated, and distributed in accordance with the requirements of the Plan and ERISA. *See, e.g.*, *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005) (finding, in a directly analogous company stock case, plan participants sought to recover plan's losses due to fiduciary breaches); *Kuper v. Iovenko,* 66 F.3d 1447, 1452-53 (6th Cir. 1995) (explaining that "breaches of fiduciary duty injure the plan and, therefore, any recovery should go to the plan"). Accordingly, Plaintiffs' claims are tailor-made for class treatment under Rule 23.

## B. The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)

Rule 23(a) sets out four requirements which must be satisfied before a class can be certified. The requirements are:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

---

[7] *Cf. Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1360-61 (N.D. Ga. 2005) (Story, J.) (noting "[c]ourts have consistently read the italicized language [of § 409(a)] as requiring that a plaintiff pursuing § 502(a)(2) relief do so on behalf of the plan itself, and not on behalf of an individual recipient or recipients.").

> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citing Fed. R. Civ. P. 23(a)).   "These four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation," and "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

While a court's class certification analysis is rigorous, the Supreme Court recently clarified that it is not unbridled, noting:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries. . . . Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95, (2013) (internal citations omitted).

## 1.    The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1)

The first requirement of Rule 23(a) asks whether "there are so many members of the class that joinder of them all is impracticable." *Belton v. Ga.*, No. 10-cv-0583-RWS, 2011 WL 925565, at *3 (N.D. Ga. Mar. 14, 2011) (Story, J.). "In order to demonstrate numerosity, plaintiffs need not prove that joinder is impossible; rather, plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class." *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1324 (N.D. Ga. 2007) (Story, J.). The Eleventh Circuit has held that "[w]hile there is no hard and fast numeric requirement, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors.'" *Diakos v. HSS Sys., LLC*, No. 14-cv-61784, 2015 WL 5921585, at *4 (S.D. Fla. Sept. 29, 2015) (quoting *Cox v. Am. Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Here, while the exact number of Class members is presently unknown to Plaintiffs, and can only be ascertained through appropriate discovery, publically available information suggests that at least thousands of that class members participated in, or were beneficiaries of, the Plan during the Class Period whose Plan accounts invested in SunTrust Stock, making joinder of all members impracticable, and thereby satisfying FED. R. CIV. P. 23(a)(1)'s numerosity requirement of FED. R. CIV. P. 23(a).[8]

---

[8] For example, according to the Plan's Form 11-K Annual Report, there were

### 2. The Case Satisfies the "Commonality" Requirement of 23(a)(2)

As this Court recently recognized, "the Supreme Court has explained that the commonality and typicality inquires 'tend to merge.'" *Shepherd v. Vintage Pharm., LLC*, No. 11-cv-3805, 2015 WL 6956767, at *6 (N.D. Ga. Nov. 4, 2015). "Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d at 1346 (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). The commonality requirement has been clarified as follows:

> Any alleged common contention of the potential class must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. What matters

---

37,955 Participants and beneficiaries of the Plan as of December 31, 2007. *See also* Complaint ¶ 122 n.13 (same). Testimony by SunTrust's Rule 30(b)(6) designee Thomas Panther further confirms that numerosity is satisfied. *See, e.g.*, Transcript of Rule 30(b)(6) deposition of SunTrust Banks, Inc. by Thomas E. Panther, Dec. 18, 2015, at page 181, line 22 through page 182, line 7 (attached to the Gyandoh Declaration as Exhibit 2):

> Q: And do you know how many participants there were in the 401(k) Plan during the period from 2007 through 2011?
>
> A: I do not.
>
> Q: Safe to say there were thousands of them?
>
> A: Yes.
>
> Q: Okay. And there were thousands of participants in the Plan who also held SunTrust Stock through the Plan during the period from 2007 through 2011?
>
> A: Yes.

> to class certification ... is not the raising of common questions—even
> in droves—but, rather the capacity of a classwide proceeding to
> generate common *answers* apt to drive the resolution of the litigation.

*Shepherd*, 2015 WL 6956767, at *6 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131

S. Ct. 2541, 2551 (2011)).

The Supreme Court explained in *Wal-Mart* that "[c]ommonality requires the

plaintiff to demonstrate that the class members have suffered the same injury."

*Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.   However, "[f]or purposes of Rule

23(a)(2), even a single [common] question will do." *Id.* at 2556.   A district court

within this Circuit recently noted the minimal showing necessary to satisfy the

commonality requirement, stating "[p]laintiffs face a 'low hurdle' in bearing this

'light' burden, as commonality 'does not require that all questions of law and fact

raised be common.'"   *Sanchez-Knutson v. Ford Motor Co.*, No. 14-cv-61344, 2015

WL 6395040, at *5 (S.D. Fla. Oct. 6, 2015) (quoting *Williams v. Mohawk Indus.,

Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)).

The Eleventh Circuit has stated that claims generally involve common

questions of law or fact where the allegations of wrongdoing involve a common

course of conduct by the defendants." *Rosario v. King & Pince Seafood Corp.*,

Nos. 204-cv-036, 205-cv-044, 2006 WL 2367130, at *11 (S.D. Ga. Mar. 7, 2006).

Here, Plaintiffs' breach of fiduciary duty allegations, which focus on Defendants'

fiduciary actions and inactions, clearly meet this standard.   Commonality is

12

satisfied here because the one issue central to Plaintiffs' claims is whether Defendants breached fiduciary duties owed to the Plan, Plaintiffs, and members of the Class by failing to act prudently and solely in the interests of the Plan and its Participants and beneficiaries.   Moreover, Plaintiffs and the Class share other pivotal questions of law *and* fact that will resolve issues that are central to the validity of the pending ERISA claims, including:  (1) whether Defendants each owed a fiduciary duty to Participants; (2) whether Defendants breached their fiduciary duties to Participants by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries; (3) whether Defendants violated ERISA; and (4) whether the Plan has suffered losses and, if so, the appropriate measure of damages.  *See* Complaint ¶ 123.

In sum, Plaintiffs allege a legal theory that applies equally to all Class members – that Defendants' uniform conduct violated ERISA and harmed the Participants invested in SunTrust Stock uniformly, albeit in amounts proportional to the SunTrust Stock held in their Plan accounts.  Indeed, while discovery has only recently begun in this case, documents reviewed to date reflect that while the Benefits Plan Committee met quarterly and reviewed *other* investment options in the Plan, there was no review regarding the prudence of SunTrust Stock, thus evidencing a breach of fiduciary duty.  *See* Gyandoh Decl. ¶ 4 (identifying Benefits Plan Committee meeting minutes from the Class Period in which the prudence of

SunTrust Stock was not evaluated).  Incredibly, on at least three occasions, while the Benefits Plan Committee reviewed *other* Plan investment options, it specifically noted its review *excluded* SunTrust Stock.  *See* Gyandoh Decl. 5.  This was confirmed during the Rule 30(b)(6) by deponent Tom Panther, a member of the Benefits Plan Committee during the Class Period.  *See, e.g.*, Rule 30(b)(6) Transcript at page 168, lines 3 through 13 (attached to the Gyandoh Declaration as Exhibit 3):

> Q:  Did – During the period from 2007 through 2011, did the SunTrust Board ever consider removing SunTrust Stock as an investment alternative in the Plan?
> A:  Not to my knowledge.
> Q:  Okay.  During the period from 2007 through 2011, did the SunTrust Board ever seek advice from anyone about whether or not to continue offering SunTrust Stock as an investment alternative in the 401(k) Plan?
> A:  Not to my knowledge.

Accordingly, discovery confirms the commonality of Plaintiffs' claims across all Participants and Class Members.[9]

---

[9] The Rule 30(b)(6) deposition also confirmed the commonality of communications with Plan Participants.  *See, e.g.*, Rule 30(b)(6) Transcript at page 193, line 6 through line 20 (attached to the Gyandoh Declaration as Exhibit 4):

> Q:  Okay.  Was there a process in place at SunTrust to make sure that the communications between SunTrust about the Plan, and those communications being to the Participants, were uniform and standardized?
> A:  Yes, those would have been performed by our HR Department.
> Q:  Okay.  And one of the goals of that process was to make sure that whatever was sent to Participants about a plan was uniform and common to all of the, correct?

The damages sought on behalf of the Plan further confirm that commonality is satisfied.  In an ERISA case such as this, the proper measure of damages for any given Participant derives from the loss to the plan as a whole and is calculated as the difference between what plan participants received and what the plan participants would have received if the plan assets had been invested prudently. The loss to the plan as a whole is not calculated on an individual plan participant basis.  Rather, the trier of fact looks to the prudent investment alternatives the Plan offered during the Class Period to determine what the Plan would have earned but for Defendants' breaches of fiduciary duty and then the loss is allocated formulaically to participants based upon their holdings in the imprudent stock.[10]

Plaintiffs' methodology for calculating Plan-wide damages is further evidence that this action meets the commonality requirement.  *See, e.g.*, *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (finding commonality in

---

A:  Yes.

Q:  And that was true during the period from 2007 through at least 2011, correct?

A:  Yes.

[10]  *See, e.g.*, *LaRue*, 552 U.S. at 253 n.4 ("Section 502(a)(2) encompasses appropriate claims for 'lost profits.'"); *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*, 895 F.2d 729, 733 (11th Cir. 1990) ("The question of loss to the Plan ... requires a comparison between the actual performance of the Plan and the performance that otherwise would have taken place") (quoting *Donovan v. Bierwirth,* 754 F.2d 1049, 1057 (2d Cir. 1985)); *Donovan*, 754 F.2d at 1056 (noting that under [ERISA§ 409 and § 502(a)(2)] the "appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of the trust").

similar company stock action because "[p]laintiffs are not asserting claims for their own individual accounts' losses.  Plaintiffs have filed suit on the Plan's behalf alleging that Defendants' conduct harmed the Plan as a whole and seeking recovery on the Plan's behalf.  There can be no conduct or claims conflicts because each class member is bring suit on the Plan's behalf, not as an individual.  In effect, class members, as the Plan's advocates, are each bringing the exact same suit.").  Indeed, in rejecting a challenge to commonality in an ERISA action, one court concluded, "[p]laintiffs' claim for relief under ERISA § 502(a)(2) ultimately does not require numerous individualized determinations with respect to the statute of limitations," because  "[w]hile the claim may be filed by an individual, the relief that is available is not individualized." *Eslava*, 2007 WL 2298222, at *1.

The same reasoning is warranted here:  Plaintiffs' claims do not require adjudication of individualized issues, so commonality is easily satisfied. Numerous courts have found commonality satisfied in analogous company stock cases.  *See* Gyandoh Decl. Exhibit 1(listing the overwhelmingly number of courts that have granted class certification in analogous company stock cases).

### 3.    Movants' Claims Satisfy the "Typicality" Requirement of 23(a)(3)

Typicality is "satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class."  *Belton*, 2011 WL 925565, at *5.  The Eleventh Circuit has

clarified, "claims do not need to be identical to satisfy the typicality requirement."

*Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).[11]

This standard is met here.  Like Movants, each Class member was a Plan Participant during the Class Period with part of his or her Plan account invested in SunTrust Stock.  Each Movant, along with the other Class members, was injured by Defendants' fiduciary breaches.  Therefore, the typicality requirement of Rule 23(a)(3) is satisfied.  Courts across the country routinely find typicality satisfied in analogous company stock cases for breaches of fiduciary duties under ERISA §502(a)(2), given the representative nature of such claims.[12]  *See also* Gyandoh Decl. Exhibit 1 (identifying fifty four opinions certifying directly analogous

---

[11] Courts in directly analogous company stock breach of fiduciary duty actions have stated the same. *See, e.g.*, *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-cv-2593, 2011 WL 1303367, at *4 (D. Kan. Apr. 6, 2011) ("Importantly, the interests and claims of the named plaintiffs and class members 'need not be identical to satisfy typicality.'"); *In re Enron Corp.*, No. 01-cv-3913, 2006 WL 1662596, at *10 (S.D. Tex. June 7, 2006) ("The test for typicality is satisfied if the class representatives' claims or defenses are typical of, but not necessarily identical to, those of the class.").

[12] *See, e.g.*, *In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367, at *4 (noting "numerous courts in analogous contexts have found that typicality was satisfied"); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 167 (E.D. Pa. 2009) (finding the "typicality" requirement of Rule 23 satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members."); *Smith*, 238 F.R.D. at 617 (where proposed representatives and putative class members' claims are based on theory that defendants breached fiduciary duty regarding investment in company stock during the class period, "[t]here is [] no question as to whether the proposed Class Representatives' claims are typical of those of the Class Members"); *DiFelice*, 235 F.R.D. at 79 ("given the representative nature of a suit filed pursuant to ERISA 502(a)(2), [plaintiff's] claim is necessarily typical of those of the rest of the class.").

company stock claims). Plaintiffs respectfully submit that this Court should find that this action satisfies the typicality requirement of Rule 23(a)(3).

### 4. Movants Will Fairly and Adequately Protect the Interest of the Class, Satisfying Rule 23(a)(4)

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the Class." *Belton*, 2011 WL 925565, at *5 (quoting FED. R. CIV. P. 23(a)(4)). "Adequacy of representation means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza*, 273 F.3d at 1346. "[T]he adequacy of representation analysis involves two inquiries: '(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action.'" *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d at 1331 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)).

Movants have no interests antagonistic with each other, the Class, or any segment of the Class. To the contrary, Movants' interests are identical to those of the Class. Movants, like all Class members, were Participants during the Class Period, and they seek Plan-wide relief for Defendants' identical breaches of fiduciary duty that equally affected similarly situated Participants, as discussed above. Movants must prove the same wrongdoing by Defendants as any and every absent Class members would need to show to establish Defendants' liability.

Moreover, each Movant has confirmed that he or she is ready, willing, and able to fulfill the duties required of a class representative. Each of them has submitted a declaration attesting to his or her efforts to date and confirming the Movant's desire to serve as a representative of the Class. *See* Gyandoh Decl. Exhibits 5 through 9. As noted therein, Movants understand their responsibilities and duties as class representatives and will take all steps necessary to protect the interests of the proposed Class. Courts have relied upon similar declarations as evidence of the named plaintiffs' adequacy. *See, e.g.*, *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 670 (S.D. Fla. 2014) (referencing named plaintiff affidavit filed in support of class certification in finding adequacy satisfied). Further, in directly analogous company stock actions, courts found plaintiffs similar to Movants here to be adequate.[13] In sum, Movants satisfy Rule 23(a)(4)'s adequacy requirement.

---

[13] *See, e.g.*, *Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009) ("There is no indication that [plaintiff's] interests are antagonistic to those of the class.… Again, in an action seeking to recover on behalf of a plan, the focus is on the impact of the defendants' actions on the plan. Indeed [plaintiff] has an incentive to maximize recovery to the [p]lan because she will be affected."); *In re Nortel Networks, Corp. "ERISA" Litig.*, No. 03-md-01537, 2009 WL 3294827, at *10 (M.D. Tenn. Sept. 2, 2009) (adequacy was satisfied in ERISA action "because 'prudence' in breach of fiduciary duty claims is defined only in terms of the defendant's conduct, and because Plaintiffs seek to recover losses on behalf of the Plan"); *Brieger v. Tellabs*, 245 F.R.D. 245, 356 (N.D. Ill. 2007) ("Plaintiffs here bring claims on behalf of the [p]lan, not for individual relief…. The Court finds that its role is to determine whether the defendants breached their fiduciary duties to the [p]lan. Therefore… there is no inherent conflict between the claims of the named plaintiffs and those of the putative class."). *Cf. Rosario*, 2006 WL 2467130, at *13-14 (rejecting defendants argument against plaintiffs' adequacy

### 5. The Proposed Class is Adequately Defined and Clearly Ascertainable

As the Eleventh Circuit recently noted, "[o]ne threshold requirement is not mentioned in Rule 23, but is implicit in the analysis: that is, the plaintiff must demonstrate that the proposed class is adequately defined and clearly ascertainable." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). The *Bussey* Court explained that "an identifiable class exists if its members can be ascertained by reference to objective criteria," noting that "the analysis of the objective criteria also should be administratively feasible," meaning "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* at 787 (quoting *Newberg on Class Actions* § 3.3 p. 164 (5th ed. 2012)).

The proposed class here consists of all participants in the Plan during the Class Period whose accounts included investment in SunTrust Stock. As noted above in the discussion of Rule 23(a)(1)'s numerosity requirement, the Plan's filings identify the number of participants in the Plan during the Plan year, satisfying the identifiability requirement. Moreover, SunTrust Bank in its role as the Plan's trustee likely maintains a list of all Plan Participants. Accordingly, the

---

based on purported conflicting economic interests, noting "[t]o the contrary, it appears that all putative class members were harmed in the same way that Plaintiffs were harmed" and concluding "I am persuaded that the named Plaintiffs fairly and adequately seek to protect the interest of the other class members").

proposed class satisfies the threshold ascertainability requirement implicit in Rule 23(a).  *See, e.g.*, *In re Piedmont Office Trust, Inc. Sec. Litig.*, 264 F.R.D. 693, 697 (N.D. Ga. 2010) (certifying proposed class in securities action, noting "[w]hile the precise numbers of proposed class members need not be established, the class description must be sufficiently definite for the court to ascertain member status.").

### D.      The Class May be Properly Certified Under Rule 23(b)(1)

"Once the plaintiffs have established the four prerequisites of Rule 23(a), they must also satisfy at least one of the alternative requirements of Rule 23(b)." *Piazza*, 273 F.3d at 1346.  "Rule 23(b) requires a class to proceed under one of four possible labels: (a) as an incompatible standards class under Rule 23(b)(1)(A); (b) as a limited fund class under Rule 23(b)(1)(B); (c) as an injunctive class under Rule 23(b)(2); or (d) as a class where common issues predominate under Rule 23(b)(3)." *Rosario*, 2006 WL 2367130, at *14.  As discussed below, the proposed Class may be certified under Rule 23(b)(1)(B), Rule 23(b)(1)(A), or both.

### 1.      Certification Under Rule 23(b)(1)(B) is Most Appropriate

As noted *supra*, the Advisory Committee Notes to Rule 23 instruct that certification under Rule 23(b)(1)(B) is appropriate in "***an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust***."  FED.

21

R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (emphasis added).   As explained by one district court when discussing the propriety of certifying similar company stock ERISA claims under Rule 23(b)(1)(B), "because Plaintiffs properly bring this action in a representative capacity on behalf of the Plan itself, adjudications with respect to individual members of the class … would as a practical matter be dispositive of the interest of other members not parties to the adjudications or [would] substantially impair their ability to protect their interests." *Smith*, 238 F.R.D. at 617.[14]   Indeed, courts across the country recognize that because suits such as this one brought pursuant to ERISA § 502(a)(2) are representational or derivative, i.e., brought on behalf of the plan by definition, claims of this nature present a paradigmatic example of those appropriate for certification under Rule 23 (b)(1).[15]   In short, by its very nature this ERISA action is particularly well-suited for certification under Rule 23(b)(1)(B).

### 2.   Certification is Also Appropriate under Section 23(b)(1)(A)

---

[14] *See also In re Tyco, Int'l, Ltd. Multidistrict Litig.,* No. 02-md-1335, 2006 WL 2349338, at *7 (D.N.H. Aug. 15, 2006) ("the majority of courts have concluded that certification under 23(b)(1)(B) is proper" in analogous actions); Gyandoh Decl. Exhibit 1.

[15] *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (certifying analogous company stock breach of fiduciary duty claims and recognizing that because ERISA § 502(a)(2) breach of fiduciary duty claims are derivative in nature they "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class); *Knight v. Lavine*, No. 12-cv-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013) (same); *Yost v. First Horizon Nat'l. Corp.*, No. 08-cv-2293, 2011 WL 2182262, at *13 (W.D. Tenn. June 3, 2011) (same).

Certification under subsection (b)(1)(A) is also appropriate, and courts commonly certify analogous company stock actions under both subsections of 23(b)(1).[16]  Courts have recognized that the nature of company stock ERISA cases challenging plan-wide conduct makes certification under Rule 23(b)(1)(A) appropriate.[17]  The representative nature of Plaintiffs' ERISA claims alleging Defendants' Plan-wide fiduciary misconduct illustrates the propriety of certification under this subsection.  Accordingly, the proposed Class could be certified under Rule 23(b)(1)(A).

### E.    Movants' Chosen Counsel Will Adequately Represent the Class

As noted above, inquiry into the adequacy of class counsel has been decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives.  Rule 23(g)(1)(A) focuses upon the qualifications of plaintiffs'

---

[16] *See, e.g.*, *Paschal v. Child Dev., Inc.*, No. 12-cv-0184, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014) ("specifically as to plaintiffs' ERISA claims, several courts have held the type of ERISA claims for breach of fiduciary duty raised here are particularly appropriate for Rule 23(b)(1)(A) and (B) certification because of the ERISA's distinctive representative capacity and remedial provisions."); *see also Enron*, 2006 WL 1662596, at *15 ("the Court finds that certification under both Rule 23(b)(1)(A) and (B) is appropriate here"); *Yost,* 2011 WL 2182262, at *13-14 (certifying class under Rule 23(b)(1)(A) and 23(b)(1)(B)).

[17] *See, e.g.*, *In re Merck & Co., Inc. Sec., Der. & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009) (concluding "the risk of establishing inconsistent standards under ERISA is particularly strong where, as here, a central element of the prudence claim is not an individual matter: the fiduciary duties are owed to the plan"); *Smith*, 238 F.R.D. at 617 ("if the court were not to certify a class [under Rule 23(b)(1)(A)] the prosecution of separate actions by various Plaintiffs would create a risk of inconsistent or varying adjudications with respect to individual members of the class").

counsel, and instructs the Court to consider, *inter alia*:  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).  Each of these considerations demonstrates Co-Lead Class Counsel's adequacy.  Indeed, Co-Lead Class Counsel have been appointed to serve as class counsel in numerous analogous class actions and other complex litigation.[18]

Movants retained qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, including extensive experience in the context of analogous ERISA claims.[19]  As demonstrated by this litigation to date, Proposed Co-Lead Class Counsel has vigorously litigated this action on behalf of Plaintiffs and the proposed Class in order to obtain the best possible recovery for the Plan and the Class and is committed to continuing to do so.[20]  Proposed Co-Lead Class Counsel prepared initial and amended complaints containing details discerned through extensive and thorough investigation, moved

---

[18]  As noted *supra*, this Court has already appointed Proposed Co-Lead Class Counsel as Interim Co-Lead Class Counsel.  *See* Dkt. No. 53.

[19]  *See, e.g.*, Memorandum of Law in Support of Plaintiffs' Motion to Appoint Interim Co-Lead And Liaison Class Counsel, Dkt. No. 47-2 at 13-22, which Plaintiffs incorporate by reference into the instant memorandum pursuant to FED. R. CIV. P. 10(c).

[20]  *See id.* at 10-12.

for and obtained consolidation of the initially separately filed actions, followed by extensive litigation in both this Court and twice in front of the Eleventh Circuit Court of Appeals.  Co-Lead Class Counsel have delved into discovery including with respect to the administrative claims exhaustion requirement which they satisfied on behalf of Plaintiff Erwin and the Plan, preparing and serving document requests, interrogatories, and third-party subpoenas, serving requests pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and most recently taking a Rule 30(b)(6) deposition regarding the operation and administration of the Plan.  The firm résumés of Proposed Co-Lead Class Counsel, Gyandoh Decl. Exhibits 10 -12, further demonstrate their adequacy to serve as such.

Likewise, proposed Liaison Class Counsel Holzer & Holzer, is an experienced law firm that has and will continue to more than adequately serve the class.[21]   Rule 23(g)'s requirements for appointment of counsel are thus fully satisfied by proposed Co-Lead Class and Liaison Class Counsel.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court certify this action as a class action under FED. R. CIV. P. 23(a) and (b)(1), appoint Movants as representatives for the certified Class, and appoint their counsel as counsel for the certified Class.

---

[21] The firm résumé of proposed Liaison Class Counsel is attached as Gyandoh Decl. Exhibit 13.

Dated:  December 30, 2015           Respectfully Submitted,

**KESSLER TOPAZ
 MELTZER & CHECK, LLP**

/s/ *Mark K. Gyandoh*
Edward W. Ciolko
Donna Siegel Moffa
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706
(610) 667-7056 (fax)
eciolko@ktmc.com
dmoffa@ktmc.com
mgyandoh@ktmc.com
jsjohnson@ktmc.com

**STULL, STULL & BRODY**
Edwin J. Mills
Michael J. Klein
6 East 45th Street
New York, New York 10017
(212) 687-7230
(212) 490-2022 (fax)
emills@ssbny.com
mklein@ssbny.com

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022
(212) 421-6492
(212) 421-6553 (fax)
stephen@sfclasslaw.com

***Interim Co-Lead Class Counsel***

**HOLZER & HOLZER, LLC**
Corey D. Holzer, GA Bar No. 364698
Marshall P. Dees, GA Bar No. 105776
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
(770) 392-0090
(770) 392-0029 (fax)
cholzer@holzerlaw.com
mdees@holzerlaw.com

***Interim Liaison Class Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2015, I electronically filed the foregoing with the clerk of Court using the CM/ECF system, which will send a notification to all counsel of record in this Action.


/s/ Mark K. Gyandoh
Mark K. Gyandoh (*admitted Pro Hac Vice*)