## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|                              |   |                   |
|------------------------------|---|-------------------|
|                              | : |                   |
|                              | : |                   |
|                              | : |                   |
| IN RE SUNTRUST BANKS, INC.   | : | CIVIL ACTION NO.  |
| ERISA LITIGATION             | : | 1:08-CV-03384-RWS |
|                              | : |                   |

## <u>ORDER</u>

This matter is before the Court on Movants' Motion to Strike or Exclude the Expert Report of Lucy P. Allen [Doc. No. 225], Movants' Motion to Certify Class [Doc. No. 219], and Defendants' Motion for Partial Summary Judgment [Doc. No. 240]. After reviewing the record, the Court enters the following Order.

## Background

This case was brought pursuant to §§ 409 and 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132(a)(2) [Doc. No. 58 ¶ 2]. Plaintiffs are participants in the SunTrust Banks, Inc. 401(k) Savings Plan ("Plan") and bring this action on behalf of themselves, the Plan, and similarly situated Plan participants [<u>Id.</u> ¶ 1]. The Plan is a defined contribution retirement plan sponsored by SunTrust, with a primary purpose of allowing participants to save for retirement [<u>Id.</u> ¶ 3]. In their Amended

Complaint, Plaintiffs asserted that Defendants, who are fiduciaries of the ERISA Plan, breached their fiduciary duty in administering the Plan and the Plan's assets [Id. ¶ 4].   Pursuant to the requirements set forth in Fifth Third Bancorp v. Dudenhoeffer, 134 S.Ct. 2459 (2014), Plaintiffs pled alternative actions that the fiduciary could have taken consistent with securities laws.  Defendants filed an Expert Report [222] prepared by Lucy P. Allen ("Allen Report") which, in short, analyzes the validity of the proposed alternatives.

## Analysis

First, the Court must decide Defendants' Motion for Partial Summary Judgment [Doc. No. 240] to determine whether the case may proceed with all named Plaintiffs.  The Court must then determine whether it may consider the Allen Report [Doc. No. 222-1] when deciding Movants' Motion for Class Certification [Doc. No. 219], and then whether the Class is proper for certification. The Court will address each of these issues in turn.

## I.    Motion for Partial Summary Judgment

The Court will first lay out the legal standard for summary judgment and then turn to each of Plaintiffs' arguments against partial summary judgment.

A.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  Plaintiffs present four arguments as to why summary judgment should not be granted.  They are addressed below.

B.    Whether Plaintiffs' Claims were Released in Severance Agreement

Defendants argue that the Severance Agreement signed by Plaintiffs Danielle Clay, Paul Hellman, Betty Pickens, Phyllis Reagan, and Demetria Whisby (collectively, the "Releasing Plaintiffs") bars those individuals from bringing this action.  Defendants rely on Stargel v. SunTrust Banks, Inc., 968 F.Supp.2d 1215 (N.D. Ga. 2013), vacated on other grounds, 791 F.3d 1309 (11th

AO 72A
(Rev.8/82)

Cir. 2015), to support their position that the Releasing Plaintiffs gave up their right to bring an action for the claims asserted in this case.  Stargel is a substantively and procedurally similar case, also filed against SunTrust, in which defendants moved for summary judgment in a breach of fiduciary duty case brought under ERISA because plaintiffs signed a severance agreement relinquishing their right to sue.  968 F. Supp. 2d at 1219-1220.  The main difference between Stargel and the present case is the severance agreement in Stargel specifically stated that the release includes claims brought under ERISA. Id. at 1221.  However, Stargel is still instructive because Plaintiffs agree that the argument does not revolve around an omission of ERISA by name in the Severance Agreements.  Instead, the issue here is whether the Severance Agreement specifically provides a carve-out for the claims asserted in this case.

It is undisputed that Plaintiffs bring their claims under ERISA §§ 409 and 502(a)(2).  However, the parties disagree as to whether the claims are for "vested benefits" earned under the plan.  Defendants assert that claims for vested benefits due under the plan can only be brought under § 502(a)(1)(B). They are correct. As in Stargel, the Amended Complaint here does not contain a cause of action to recover benefits, vested or otherwise. Plaintiffs bring their claims under

4

§ 502(a)(2).

Further, in <u>Stargel</u>, the carve-out for "'[c]laims related to Stargel's entitlement to receive any vested benefits earned under any SunTrust employee benefit plan' merely preserve[d] Stargel's right to the benefits she was entitled to under the terms of SunTrust's employee benefit plans at the time she signed the Release." 968 F. Supp. 2d at 1222-23. Similarly, the carve-out provision signed by the Releasing Plaintiffs in the current case states: "I am not waiving or releasing any . . . Claims related to my entitlement to receive any vested benefits I have earned under any SunTrust employee benefit plan" [Doc. No. 240-3 ¶ 4]. Therefore, the present carve-out provision only preserves the Releasing Plaintiffs' rights to the benefits they are entitled to under the terms of the ERISA plan at the time of the signing, and they did in fact release the asserted claims at the time of signing.

> C.   Whether Plan Beneficiaries can Release Plan's Claims as a Matter of Law

Plaintiffs argue that their claims, brought under §§ 409 and 502, are "not . . . seeking recovery on behalf of individual plan participants and beneficiaries, but instead, are brought on behalf of and for the benefit of the plan" [Doc. No. 242,

5

p. 12 (citing <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 142, n.9 (1985)].

Plaintiffs, citing cases from other districts, conclude that this means an individual

release has no bearing on whether an individual can sue on behalf of the Plan [<u>Id.</u>

at 13].

The <u>Stargel</u> case is instructive here as well.  In response to a similar

argument proposed by plaintiffs in that case, the district court stated:

> In response to Stargel's argument that the Release does not extinguish her
> right to bring a case on behalf of the Plan, Defendants point to § 2.3 in
> which she "[covenanted, warranted, and agreed] that she will not institute,
> encourage, or join in as a class member or otherwise, any legal, or other
> proceeding against SunTrust or the other Defendants involving any of the
> Claims released by this Agreement" . . . Defendants are correct. The terms
> of the Release are simply unambiguous—Stargel cannot institute or join in
> the action before the Court.

<u>Stargel</u>, 968 F. Supp. 2d at 1224 (internal citations omitted).  Similarly, Plaintiffs

in this case signed an agreement stating, "I covenant not to . . . become a member

of any class suing SunTrust asserting any claim released herein." [Doc. No. 240-3

¶ 4].  As in <u>Stargel</u>, this covenant prohibits the Releasing Plaintiffs from joining

the present action.

> D.    Whether Most of the Releasing Plaintiffs' Claims Post-Date the
>       Execution of the Severance Agreements

The proposed class period is May 15, 2007 to March 30, 2011.  Plaintiffs

6

argue that "[e]ven if Defendants' interpretation of the releases were otherwise correct as to what is released . . . the Releasing Plaintiffs did not release claims arising after their respective signature dates, which were October 11, 2007 (for Plaintiffs Pickens and Hellman), November 5, 2007 (for Plaintiff Reagan), January 30, 2008 (for Plaintiff Whisby), and May 5, 2008 (for Plaintiff Clay)" [Doc. No. 242, p. 15].

Defendants do not dispute that the Releasing Plaintiffs may have claims that fall outside of the periods covered by the Release in their Severance Agreement. But it is also undisputed that each of the Releasing Plaintiffs purports to bring claims that fall inside the period covered by the Release in their Severance Agreement; that is, they each seek to pursue claims that arose between May 15, 2007 (the date the putative Class Period opened) and the respective dates on which they signed the Severance Agreement (which is the last day covered by their Release). Therefore, the Releasing Plaintiffs cannot join a class purporting to bring claims within the period that was waived within the signed Severance Agreement.

7

E.      Whether the Releasing Plaintiffs Knowingly and Voluntarily
        Released the Claims

Plaintiffs note that at least one other district court has applied the "knowing

and voluntary" standard to releases of ERISA claims.  [Doc. No. 242, p. 18 (citing

Bacon v. Stiefel Labs., Inc., No. 09-21871-CV, 2011 WL 4944122, at *4 (S.D.

Fla. Oct. 17, 2011)].  Plaintiffs argue that this raises a genuine issue of material

fact as to whether the Releasing Plaintiffs knowingly and voluntarily released the

claims in this case [Id.].

The Releasing Plaintiffs signed that they "understand that [they] are

waiving and releasing all these [c]laims on a knowing and voluntary basis" [Doc.

No. 240-3 ¶ 4].  To determine whether an individual knowingly and voluntarily

signs a release, the Eleventh Circuit has directed courts to consider the totality of

the circumstances specifically referencing the following factors:

> [T]he plaintiff's education and business experience; the amount of time the
> plaintiff considered the agreement before signing it; the clarity of the
> agreement; the plaintiff's opportunity to consult with an attorney; the
> employer's encouragement or discouragement of consultation with an
> attorney; and the consideration given in exchange for the waiver when
> compared with the benefits to which the employee was already entitled.

Myricks v. Fed. Reserve Bank of Atlanta, 480 F.3d 1036, 1040 (11th Cir. 2007)

(citing Puentes v. United Parcel Serv., Inc., 86 F.3d 196, 198 (11th Cir. 1996)).

8

The Releasing Plaintiffs do not argue that the factors cited lend credence to their argument. Instead, their argument is based on the assertion that they did not realize the current claims were within the scope of the Severance Agreement. The scope of the agreement is a legal assessment for the Court to determine. Because the Court has determined that these claims were within the scope of the agreement, and the Releasing Plaintiffs signed that they knowingly and voluntarily released the claims within the agreement, there is no genuine issue of material fact.

>### F.   Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [Doc. No. 240] is **GRANTED.** The claims brought by Plaintiffs Danielle Clay, Paul Hellman, Betty Pickens, Phyllis Reagan, and Demetria Whisby are accordingly **DISMISSED.**

## II.   Motion to Strike

Movants have moved to strike or exclude the Allen Report arguing that it is neither relevant nor helpful to this Court's class certification inquiries. After considering the relevant legal standard, the Court will consider the parties arguments.

9

AO 72A
(Rev.8/82)

A.   Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony

and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  This rule compels the district courts to "perform the critical

'gatekeeping' function concerning the admissibility of expert scientific evidence"

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Daubert v.

Merrell Dow Pharm., Inc., 509 U.S. 579, 600 (1993)).   In performing this

gatekeeping function, the Eleventh Circuit has articulated a tripartite test to

determine the admissibility of expert testimony under Rule 702, that considers

whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

10

mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> (quoting <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548 (11th Cir. 1998)).  However, at a class certification stage, the gatekeeping function is not as stringent because the determination is made by the court rather than a jury.  <u>See</u> <u>United States v. Brown</u>, 415 F.3d 1257, 1268 (11th Cir. 2005).

> B.    Sections VI.A and VI.B

Movants argue that Sections VI.A and VI.B of the Allen Report improperly focus on the merits of the underlying action and do not assist the trier of fact, thus failing the third prong of the test [Doc. No. 225-1, p. 2].  In an analogous ERISA breach of fiduciary duty case, the Supreme Court held that, when determining whether Rule 23 has been met, a court must engage in a rigorous analysis which may "entail some overlap with the merits of the plaintiff's underlying claim." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351 (2011).  Among other considerations, the Court is directed to consider  applicable substantive law. <u>DWFII Corp. v. State Farm Mut. Auto. Ins. Co.</u>, 469 F. App'x 762, 765 (11th Cir. 2012).

To determine whether the Allen Report assists the trier of fact, it is

11

important to note what must be proved at a class certification stage.  Both parties agree that Dudenhoeffer controls the merits of the underlying action [See Doc. No. 225-1, p. 9; Doc. No. 239, p. 2).  The Supreme Court in Dudenhoeffer held that "[t]o state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it."  134 S. Ct. at 2472. Plaintiffs allege the alternative actions in their Amended Complaint [Doc. No.176, ¶¶ 325-348].  Movants argue that the Allen Report only addresses whether the proposed alternatives are viable–an unnecessary inquiry at the class certification stage.

Defendants argue that because Movants must show that members of the same class suffered the same injury, the Allen Report assists in determining whether the proposed class fits with Plaintiffs' theory of liability and damages. Dukes, 564 U.S. at 349-50. Defendants also argue that Plaintiffs are ignoring the Court's obligation to engage in a rigorous analysis to determine that all of the prerequisites of Rule 23(a) have been satisfied as required by Dukes.

The Court concludes that the Allen Report is "helpful and illuminating as to the issues of concern in the Motion for Class Certification." Fisher v. Ciba Specialty Chem. Corp., 238 F.R.D. 273, 280 (S.D. Ala. 2006). Accordingly, Movants' Motion to Strike as it relates to Sections VI.A and VI.B of the Allen Report is **DENIED.**

C.      Sections VI.C – VI.F

Sections VI.C through VI.F analyze how Plaintiffs' proposed alternatives would affect different members of the plan. Movants argue that Sections VI.C through VI.F of the Allen Report should be stricken because they are based on a faulty theory of intra-class conflict which has been routinely rejected by district courts. The cases cited by Movants support their contention that intra-class conflicts among class members do not defeat certification in ERISA actions because the plan is a representative.

Defendants argue that, in light of Dukes, the certification issue requires a more thorough analysis and cannot be "so easily brushed aside." George v. Kraft Foods Glob., Inc., No. 08 C 3799, 2011 WL 5118815, at *9 (N.D. Ill. Oct. 25, 2011) (citing Spano v. Boeing Co., 633 F.3d 574, 587 (7th Cir. 2011)). Dukes emphasizes that commonality requires that the class members have "suffered the

same injury." 564 U.S. at 350 (citing <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 148 (1982)).  Defendants assert that the Allen Report negates Movants' ability to show that they did indeed suffered the same injury [Doc. No. 239, p. 10].

Given that the class certification issue will be decided by the Court, the Court's gatekeeping function is more relaxed.  It appears that the Allen Report is relevant because it discusses the effects of the proposed alternatives which are relevant at this stage of the proceedings.  Therefore, Movants' Motion to Strike Expert Report as it relates to Sections VI.C through VI.F is **DENIED.**

## III.  Motion to Certify Class

Movants also seek certification in accordance with Federal Rule of Civil Procedure 23 of a class consisting of:

> All persons, other than Defendants and members of their immediate families, who were participants in or beneficiaries of the SunTrust Banks, Inc. 401(k) Savings Plan (the "Plan") at any time between May 15, 2007 and March 30, 2011, inclusive (the "Class Period") and whose accounts included investments in SunTrust common stock ("SunTrust Stock") during that time period.

### A.    Legal Standard

Rule 23 of the Federal Rules of Civil Procedure establishes the criteria for certifying a case as a class action.  Specifically, Rule 23(a) states that a class may

14

be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23.   These four requirements are typically referred to as "numerosity, commonality, typicality, and adequacy of representation." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Gen. Tel. Co. of Sw., 457 U.S. 147, 156 (1982)).   In addition to complying with the four requirements of 23(a), a class must also comply with at least one of the listed alternatives in 23(b). Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) (citing Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997)).

> B.   Analysis under Rule 23(a)

>> 1.   *Numerosity*

The first requirement of Rule 23(a) asks whether "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23.   Defendants do

AO 72A
(Rev.8/82)

not challenge that Movants have met the numerosity requirement. The exact number of Class members is unknown. However, Movants allege, and discovery supports, that there are at least thousands of purported class members who fit within the proposed class definition. Given the multitude of Class members, the Court finds that joinder would be impracticable. Therefore, the first requirement is met.

### 2.   *Commonality*

Rule 23(a)(2) asks whether the class has common questions of law and fact. The Supreme Court further defined this to mean that the claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 341 (2011). This means that a determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Movants assert that the one issue central to Plaintiffs' claim is whether Defendants breached fiduciary duties owed to the Plan by failing to act prudently and solely in the interests of the Plan. Movants further list other questions of law and fact that will resolve the pending ERISA Claims. The Court must determine whether these common questions meet the commonality standard articulated in

Dukes.

Defendants rely on Groussman v. Motorola, Inc., No. 10 C 911, 2011 WL 5554030, at *1 (N.D. Ill. Nov. 15, 2011), to support their position that commonality is not satisfied merely because all class members were Plan participants. Groussman supports Defendants' argument that the assessment of damages under Plaintiffs' legal theory creates individual inquiry. Id. at *4. The Court recognizes Defendants' argument but disagrees with the Illinois District Court. Just because the alternatives pled affect different individuals in the class in different ways does not change the fact that the determination of whether a breach of fiduciary duty occurred will provide classwide resolution. Plaintiffs still suffered the same alleged breach of fiduciary duty and have appropriately pled alternatives according to Dudenhoeffer. The differences among class members will be resolved if and when the case arrives at the damages stage. The possibility of a complex algorithm to award appropriate damages to each member does not carry the day at class certification. See Shanehchian v. Macy's, Inc., No. 1:07-CV-00828, 2011 WL 883659, at *7 n.4 (S.D. Ohio Mar. 10, 2011) (noting that arguments regarding the allocation of damages is premature and unpersuasive and that the court is "fully capable of structuring the damages allocation process in

such a way as to account for individual differences among the class members.").
The Court does not find that the Class Certification requires a conclusion that the
proposed alternatives affect all members uniformly. This does not defeat
commonality–Plaintiffs still suffered the same injury.

> 3.   *Typicality*

The typicality requirement ensures that "the claims or defenses of the
representative parties are typical of the claims or defenses of the class." FED. R.
CIV. P. 23(a)(3). "This requirement is satisfied where the named plaintiffs' claims
'arise from the same event or pattern or practice and are based on the same legal
theory' as the claims of the class." Belton v. Georgia, No. 1:10-CV-0583-RWS,
2011 WL 925565, at *5 (N.D. Ga. Mar. 14, 2011) (quoting Kornberg v. Carnival
Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)).

Defendants first argue that Movants Whisby and Smothermon assert claims
that are atypical from the class because of signed severance agreements. The
Court granted partial summary judgment against the Releasing Plaintiffs,
including Whisby. See Section I. C., *supra*. Defendants assert that there is an
issue of fact as to whether the same defense will apply to Smothermon. If, through
discovery, Defendants show that Smothermon did sign the same release as

Whisby, she will be removed as a class representative. However, until that time, there is no reason to preclude the remaining named Plaintiffs (Erwin, Fisch, Trau, and Smothermon) from being certified as representatives because Plaintiffs have shown these individuals were injured in the same way as the rest of the class.

Defendants also assert an intra-class conflict theory. Plaintiffs correctly point out that many courts have rejected this theory, favoring the notion that, because the claims are brought on behalf of the Plan, individual conflicts are irrelevant. See, e.g., In re First Am. Corp. ERISA Litig., No. CV-07-07585, 2009 WL 928294, at *3 (C.D. Cal. Apr. 2, 2009); In re Aquila ERISA Litig., 237 F.R.D. 202, 209 (W.D. Mo. 2006). To the extent that interests within the class differ with respect to a breach date, those interests are outweighed by the shared interest in establishing that Defendants' breached their fiduciary duty. DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 79 (E.D. Va. 2006).

4.   *Adequacy of Representation*

Defendants reassert that Movants are inadequate representatives of the Class due to purported conflicts discussed *supra*. Defendants rely on Pickett v. Iowa Beef Processors, 209 F.3d 1276 (11th Cir. 2000), a non-ERISA case, to support their point that representation is inadequate when representatives "claim

harm from the very same acts from which other members of the class have benefitted." 209 F.3d at 1280. However, the Eleventh Circuit in that case also stated that "a party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." Id. (citing 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1768 at 326-27 (2d ed. 1986). Defendants' breach remains at the heart of this controversy–a claim which the named Plaintiffs have vowed to zealously litigate. Taking guidance from another district court, this Court will monitor potential conflicts that may arise and will consider creating subclasses should they become necessary. See Brieger v. Tellabs, Inc., 245 F.R.D. 345, 354 (N.D. Ill. 2007).

B.     Analysis under Rule 23(b)

Plaintiffs assert that the class can be certified under two alternative provisions of Rule 23(b)(1), which allows a class to be maintained where

> prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 346 n.2 (2011) (quoting FED. R.

20

CIV. P. 23(b)(1)(A-B).  In response, Defendants argue that the claims cannot be certified under either provision of Rule 23(b)(1) because the damages pled are not "merely incidental to the injunctive or declaratory relief." Dukes, 564 U.S. at 360. However, the discussion in Dukes focused on Rule 23(b)(2), not 23(b)(1).

Defendants also argue that Movants have not met the burden provided in Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), of satisfying one of the provisions of 23(b)(1) with evidentiary proof [ Doc. No. 222, p. 21-22].  However, Comcast discusses Rule 23(b)(3), and specifically states that Congress implemented additional "procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members." Id. at 1432.  Here, Plaintiff has identified a model for measuring damages and is not held to the higher standard because, for the following reasons, certification is proper under Rule 23(b)(1).

### 1.      *Rule 23(b)(1)(A)*

Plaintiffs assert that certification under subsection (b)(1)(A) is appropriate because the representative nature of these ERISA claims makes it a prime candidate for certification under this provision [Doc. No. 219-1, p. 23]. Defendants counter that certification is improper under this subsection because a

21

class cannot be certified under Rule 23(b)(1)(A) "when plaintiffs reques[t] both compensatory damages and injunctive relief." Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1195 (11th Cir. 2009) (citing Cohen v. Office Depot, Inc., 204 F.3d 1069, 1078 n.7 (11th Cir. 2000)). Plaintiffs argue that in Piazza v. Ebsco Ind. Inc., 273 F.3d 1341, 1352 (11th Cir. 2001), the Eleventh Circuit found that certification under (b)(1)(A) was "available" to a class in a breach of fiduciary duty case seeking compensatory damages. The specific issue presently before the Court was not addressed in Piazza.  However, the Court does not need to resolve the question of whether certification is proper under (b)(1)(A) because it is undoubtedly proper under (b)(1)(B).

### 2.    Rule 23(b)(1)(B)

"In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir. 2009) (citing cases).  Defendants rely on Spano to argue that a claim cannot be certified under (b)(1)(B) when the alleged conduct harmed some participants and helped others. Spano v. Boeing Co., 633 F.3d 574, 588 (7th Cir. 2011).  Plaintiffs

22

do not object to amending the class definition to include individuals "who were injured thereby." [Doc. No 238 at 15 n. 29]. With this addition, the class clearly satisfies the requirements of 23(b)(1)(B)–adjudications with respect to individual class members is dispositive of the interests of other members.  See Knight v. Lavine, No. 1:12-CV-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013);  See also, Smith v. Aon Corp., 238 F.R.D. 609, 617 (N.D. Ill. 2006) (certifying class because claims were brought in a representative capacity on behalf of the Plan); In re Tyco Int'l, Ltd., No. MD-02-1335-PB, 2006 WL 2349338, at *8 (D.N.H. Aug. 15, 2006) (following the majority of courts and finding certification of an ERISA § 502(a)(2) proper) .

As a final note, Defendants do not contest and the Court finds no reason to disagree with Movants' assertion that their chosen counsel will adequately represent the Class.   Accordingly, Movants may proceed with their chosen counsel.

## Conclusion

The class proposed by Movants, with one amendment, will help bring an efficient resolution to this case.   The proposed class satisfies all of the requirements of Rule 23(a) and also satisfies Rule 23(b)(1)(B).  Therefore, the

AO 72A
(Rev.8/82)

Movants' Motion to Certify Class [Doc. No. 219] is **GRANTED.** The class will

be defined as:

> All persons, other than Defendants and members of their immediate families, who were participants in or beneficiaries of the SunTrust Banks, Inc. 401(k) Savings Plan (the "Plan") at any time between May 15, 2007 and March 30, 2011, inclusive (the "Class Period") and whose accounts included investments in SunTrust common stock ("SunTrust Stock") during that time period and who sustained a loss to their account as a result of the investment in SunTrust Stock.

> Plaintiffs Erwin, Fish, Trau, and Smothermon are hereby appointed as class

representatives. The Court appoints the law firms of Kessler Topaz Meltzer &

Check, LLP, Stull, Stull & Brody and Squitieri & Fearon, LLP as Co-lead Class

Counsel and the law firm of Holzer & Holzer, LLC as Liason Class Counsel.

> Movants' Motion to Strike or Exclude the Expert Report of Lucy P. Allen

[Doc. No. 225] is **DENIED**, and Defendants' Motion for Partial Summary

Judgment [Doc. No. 240] is **GRANTED**.

> **SO ORDERED**, this 17th day of August, 2016.

_____
**RICHARD W. STORY**
United States District Judge

24